Keating, J.
The issue on this appeal is the effect of an unauthorized visit by a jury to the scene of the alleged crime. Defendants De Lucia and Montella were convicted, after a jury trial, of attempted burglary in the third degree and of possession of burglar’s instruments. The Appellate Division unanimously affirmed. By a closely divided court, we upheld the conviction, stating that ‘ It has long been familiar law that jurors may not impeach their own duly rendered verdict by statements or *277 testimony averring their own misconduct within or without the .juryroom.” (People v. De Lucia, 15 N Y 2d 294, 296.)
. The United States Supreme Court denied certiorari. (De Lucia v. New York, 382 U. S. 821.) Subsequently, however, Parker v. Gladden (385 U. S. 363 [Dec. 12, 1966]) was decided. The case originated in Oregon, where a trial court found that a bailiff, assigned to shepherd a sequestered jury, had told them that the defendant (petitioner) was guilty and that, if there were any error in finding the petitioner guilty, the Supreme Court would correct it. The Oregon Supreme Court found that the bailiff’s misconduct did not deprive the petitioner; Parker, of a fair trial.
In reversing, the United States Supreme Court found that the bailiff had, in a sense, become a witness against the defendant in contravention of his right to “ be confronted with the witnesses against him (U. S. Const., 6th Arndt.) Referring to the bailiff’s comments as an “ outside influence ”, the court stated (pp. 364-365) that it has “followed the ‘ undeviating rule,-’ Shepherd v. Maxwell, 384 U. S. 333, 351 (1966), that the rights of confrontation and cross-examination are among the ■fundamental requirements- of a constitutionally fair trial.”
■ Prior to the decision in Parker v. Gladden, the defendants, De Lucia and Montella, brought a petition for a writ of habeas - corpus in the United States District Court for the Northern District of New York. The writ was dismissed. While the appeal was pending, Parker v. Gladden (supra) was decided. The United States Court of Appeals for the Second Circuit accordingly vacated the order of the District Court and dismissed the writ without. prejudice, in order to give the New •York courts an opportunity to reconsider the petitioners’ claims in light.of the. Supreme Court decision., (United States ex rel. De Lucia v. McMann, 373 F. 2d 759, 760.)
..- We are .not unaware, nor was the Second Circuit, that there is a distinction between this case and Parker v. Gladden. In Parker, the Oregon court had not excluded the statements of the jurors, aá testimonially incompetent. Rather, it found that, despite this evidence of what the bailiff had said, the defendant had not been prejudiced.- Our New York case law holds that statements by jiiror's impeaching their own verdicts are inadmissible. (See, e.g., People v. Sprague, 217 N. Y. 373.) However, *278 where the ti up reine Court holds that a particular series of events, when proven, violates a defendant’s constitutional rights, implicit in that determination is the right of the defendant to prove facts substantiating his claim. The question which, therefore, presents itself in light of Parker v. 'Gladden is whether we should re-examine the applicability of the traditional common-law rule to circumstances such as those present in the case at bar or whether we should compel the defendants to seek the relief to which they are constitutionally entitled in the Federal courts. We believe that the undesirability of this latter alternative indicates that a re-examination of our common-law rule with respect to jurors in impeaching their own verdict is appropriate.[1]
The policy reason for the present rule is, of course, that we do not wish to encourage the posttrial harassing of jurors for statements which might render their verdicts questionable. With regard to juryroom deliberations, scarcely any verdict might remain unassailable, if such statements were admissible. Common experience indicates that at times articulate jurors may intimidate the inarticulate, the aggressive may unduly influence- the docile. Some jurors may “ throw in ” when deliberations have reached an impasse. Others may attempt to compromise. Permitting jurors to testify regarding such occurrences would create chaos.
On the other hand, a defendant has a right to a trial by a fair and impartial jury. The public policy considerations must at all times be weighed against the defendant’s fundamental rights.[2]
We attempted to balance these opposing considerations in People v. Leonti (262 N. Y. 256), The defendant in that case was a Sicilian, who had testified in his own behalf. After the verdict, one of the jurors swore in an affidavit that he would *279 never believe a Sicilian under oath» We held that- such an affidavit was admissible, reasoning that it did not operate so much to impeach the. verdict as to prove that the juror, because of his prejudice, never became eligible to he a, juror and, therefore, his vote was a nullity.
Thus, where a patent injustice to, a defendant was present, we distinguished the case on a philosophical ground, although the prohibited result, the. impeachment of the verdict, remained. This was a recognition that the. rule against jurors’ impeachment of their verdicts should not operate in every case., Where, as in the case of statements regarding juryroom. deliberations, every verdict might be rendered suspect, and jurors might become subjected to continuous posttrial harassment, the public policy reasons for holding such statements inadmissible mus,t ordinarily override possible injustice t,o a defendant, for here our jury system itself is at stake.
Statements concerning outside influences on a jury, however, occurring less frequently and more susceptible to adequate proof, should be admissible to show that the defendant was prejudiced, for here the danger to our jury system is minimal compared with the more easily proven prejudice to the defendant..
In the instant case, it appears that several jurors not only went to the. scene, but actually re-enacted the alleged crime.
Tq use the reasoning of the Supreme Court in Parker v. Gladden (supra), these jurors became unsworn witnesses against the defendants in direct contravention of their right,, under the Sixth Amendment, “to be confronted with the witnesses ” against them.
Our re-evaluation of the common-law rule that jurors may not impeach their own verdicts reveals that in the case, of such inherently prejudicial “ outside influences ’’ on a jury as were here present, the violation of the defendants’ Sixth Amendment rights outweighs the policy reasons for the, rule,
“ Without destroying the rule where, it properly applies we should hold that it does not apply to a situation like this where the investigation is not as to what happened in the juryroom or why, but as to a fact (illegal view) which has always been considered to be a strong ground for setting aside a verdict ”. (People v. De Lucia and Montella, 15 N Y 2d 294, 297, dissenting opinion per Desmond, Ch. J.)
*280 In this type of case, proof of the fact of the unauthorized visit is sufficient to warrant a new trial without proof of how such visit may have influenced individual ■ jurors in their juryroom deliberations. Such a visit, in and of itself, constitutes inherent' prejudice to the defendants. •
Since the District Attorney has never had an opportunity to examine the jurors regarding their statements, we remit this case to the trial court for a hearing in regard to the petitioner's’ allegations and, in the event the allegations of the petitioners are substantiated, the judgments of conviction should be vacated and a new trial ordered. ■

. In People V. Wilson (13 N Y 2d 277, 280) we held that' a defendant, sentenced as a multiple offender, could not attack predicate out-of-State felonies. We did not consider this a violation Of his fundamental constitutional rights. We noted, however, that “ If the refusal of our courts to- try out the constitutional validity of the out-of-State crimindl judgment amounted to á denial of defendant’s fundamental rights, we would have to find some other way of protecting those rights no matter what the procedural difficulties and burdens.” (Emphasis supplied.)
In this case, our refusal to allow" admission of the" jurors’ statements would, under Parker v. Gladden (supra), amount to a denial of defendants’ fundamental constitutional rights.

. See Note, 15 Buffalo L. Rev. 217.