343 So.2d 1004 (1977)
STATE of Louisiana
v.
Chester Terrell DURR.
No. 58534.
Supreme Court of Louisiana.
February 28, 1977.
Rehearing Denied April 7, 1977.
Henry C. Gahagan, Jr., Gahagan & Gahagan, Natchitoches, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James Lynn Davis, Dist. Atty., for plaintiff-appellee.
*1005 DIXON, Justice.
Chester Terrell Durr was indicted on a charge of second degree murder, a violation of R.S. 14:30.1 for the murder of Sammie A. Mitchell. A jury of twelve found defendant guilty as charged by a vote of ten to two; he was sentenced to imprisonment at hard labor for life, without eligibility for parole, probation or suspension of sentence for a period of twenty years. The defendant assigns three errors for reversal of his conviction and sentence, but has neither briefed nor argued Assignment No. 3, and it is thereby deemed abandoned. State v. Matthews, 292 So.2d 226 (La.1974); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
The facts surrounding the commission of this crime are as follows: on September 10, 1976, at approximately 8:30 p. m., Sammie Mitchell, the decedent, was sitting in the driver's seat of a 1973 Ford pickup truck parked on a secluded dirt road in Sabine Parish near J&M Poultry, a chicken farm. Sitting next to him was Martha Durr (the defendant's wife), and on the passenger side was Janet Moran (Martha Durr's sister), with her child in her lap. The defendant and Mrs. Durr had been having marital difficulties and Sammie Mitchell and Mrs. Durr had been seeing each other for three or four months. Shortly after 8:30 p.m., the defendant, Chester Durr, drove up and parked his pickup truck to the right of and behind Mitchell's truck. Defendant testified that he had gone to the farm where Sammie Mitchell worked to ask Mitchell to stop seeing his wife. The defendant left his truck and approached Mitchell's truck from the passenger side. After reaching the passenger window, the defendant asked his wife what she was doing there and whether she planned to come home. Mrs. Durr replied that she was talking to Sammie and that she did not plan to come home. At this point, the defendant alleges that Sammie Mitchell simultaneously reached for a rifle which was hanging on a gun rack in the back of the cab, and began opening his door. Defendant then fired a pistol into the truck several times, killing Sammie Mitchell. When the defendant took the stand he admitted shooting Mitchell but claimed that he took this action in self-defense.

Assignment of Error No. 1
After the defendant was found guilty he filed a motion for a new trial. In it he contended that during the course of trial the jury foreman, Mr. James R. Cook, alone, and without the knowledge or authority of the trial judge, went to a Ford dealership and re-enacted the circumstances of the shooting in a new pickup truck of the same make and model as the one in which decedent was shot (although of a different year).[1] The foreman then allegedly discussed his findings with the other members of the jury prior to the rendition of their verdict. Defendant alleges that the actions of the foreman made him a "witness" against the defendant and thereby denied the defendant his right of confrontation (U.S.Const. VI Amend.) and due process of law (U.S.Const. XIV Amend.).
At the hearing on the motion for a new trial, the owner of the automobile dealership testified that Mr. Cook had come to his lot, got into a pickup truck, and tried certain movements while in the truck. However, Mr. Cook, the foreman, was not permitted to testify about the incident. The trial judge subsequently denied the motion for a new trial.
The actions of the trial judge in refusing to permit the foreman to testify and in denying the motion for a new trial were based on R.S. 15:470 which provides:
"No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."
*1006 This statute forbidding a juror from impeaching his verdict by testimony averring his own misconduct, "relate(s) to the public interest in finality of verdicts and in encouraging freedom and frankness in jury discussion in reaching them." State v. Ledet, 298 So.2d 761 (La.1974). The rule of law preventing a juror from impeaching the verdict of a jury of which he was a member is firmly established in the jurisprudence of this State. See e. g., State v. Sullivan, 333 So.2d 638 (La.1976); State v. Johanson, 332 So.2d 270 (La.1976); State v. Credeur, 328 So.2d 59 (La.1976); State v. Fortenberry, 307 So.2d 296 (La.1975); State v. Hatch, 305 So.2d 497 (La.1975), and cases cited therein; State v. Ledet, supra; State v. Calloway, 174 La. 134, 140 So. 2 (1932); State v. Guillory, 163 La. 98, 111 So. 612 (1927).[2] In the case before us now, to permit Mr. Cook to testify would be to allow a juror to testify to his own alleged misconduct and to give evidence tending to impeach his verdict, in contravention to the settled law of this State. The trial judge was correct in precluding this testimony and in overruling the motion for a new trial. The evidence adduced at the motion for new trial did not establish jury misconduct.
This assignment lacks merit.

Assignment of Error No. 2
Defendant contends that the trial judge erred in denying his supplemental motion for a new trial which alleged that the general venire was improperly selected. The new trial was sought pursuant to C.Cr.P. 851 which provides in pertinent part:
"The court, on motion of the defendant, shall grant a new trial whenever: ". . .
"(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or . . ."
The "error or defect" that the defendant "discovered" was the decision of this court in State v. Procell, 332 So.2d 814 (La.1976), which was rendered subsequent to the verdict of guilty in this case. In Procell this court held that the system employed for the selection of the general venire in Sabine Parish prevented the general venire from being selected as required by statute and the Louisiana Constitution. As a result of that holding the conviction of the defendant in Procell was reversed.
In Procell, however, the defendant filed a motion to quash prior to trial. No motion to quash was filed in this case. C.Cr.P. 535 provides in pertinent part:
"B. A motion to quash shall be filed at least three judicial days before commencement of trial, and may be filed with permission of the court at any time before commencement of trial, when based on any of the following grounds:
"(1) The time limitation for commencement of trial has expired;
"(2) The general venire or the petit jury venire was improperly drawn, selected, or constituted; or
"(3) A grand jury indictment is invalid because the manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
"C. A motion to quash based on any grounds, other than those stated in Paragraphs A and B of this article, may be filed of right within ten days after arraignment *1007 or before commencement of the trial, whichever is earlier. Such motion may be filed with permission of the court after expiration of the ten-day period, but prior to commencement of trial.
"D. The grounds for a motion to quash under Paragraphs B and C are waived unless a motion to quash is filed in conformity with those provisions." (Emphasis added).
Official Revision Comment (c)(2) to that article provides:
"(2) The general venire or the petit jury venire was improperly drawn, selected, or constituted.
"This objection is waived unless it is urged before trial by a motion to quash the venire. It is not listed as a ground for the motion in arrest of judgment; nor is it, under ordinary circumstances, a proper ground for habeas corpus."
The correct procedural vehicle for alleging that the general or petit jury venire was improperly drawn, selected or constituted is a motion to quash. By failing to file such a motion, the defendant has waived this objection. C.Cr.P. 535(D); State v. Kibby, 294 So.2d 196 (La.1974); State v. Reese, 250 La. 151, 194 So.2d 729, cert. den., 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495 (1967).
Finding no error in the rulings of the trial court, the conviction and sentence of the defendant are affirmed.
TATE, J., dissents and assigns written reasons.
CALOGERO, J., dissents believing assignment # 1 has merit.
DENNIS, J., dissents.
TATE, Justice.
I respectfully dissent. There can be little doubt that, if the jury foreman did what he is alleged to have done, a new trial should be granted.
La.C.Cr.P. art. 762(2) permits a jury to do something similar to what was done by the juror in the instant case, view the scene of the crime. However, the official comment to that article emphasizes that a court session at the scene is exactly the same as a session in court and the judge, district attorney, defendant and counsel must be present. See Comment (d), Official Revision Comment. The obvious rationale for this requirement is that the jurors are taking evidence when they view the scene of a crime and thus the viewing must be according to the usual constitutional and statutory safeguards.
In a well-known New York decision, People v. De Lucia, 20 N.Y.2d 275, 282 N.Y.S.2d 526, 229 N.E.2d 211 (1967), several jurors went to the scene of an attempted burglary and reenacted the alleged crime without the permission or supervision of the court. The New York high court held that these jurors became unsworn witnesses against the defendants, in direct contravention of an accused's right under the Sixth Amendment to be confronted with the witnesses against them. In so holding, the court relied on the United States Supreme Court's decision in Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), which held that the right of confrontation was denied when a bailiff made out-of-court disparaging remarks about the defendant to the jurors in his charge.
The author of a Comment at 1969 Univ. of Ill. Law Forum 388, 391 notes: "While Parker contains no discussion of the effect of outside evidence considered by a jury, the constitutional argument raised there seems equally applicable to the DeLucia situation. Just as the bailiff became a witness against the defendant and thus violated the defendant's sixth amendment rights, the jury members, by making an unauthorized visit to the scene of the crime and by relating their observations to fellow jury members, became witnesses whom the defendant had a right to examine. Additional support for the DeLucia decision can be found in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, [20 L.Ed.2d 491] (1968) where the Supreme Court held that the sixth amendment right to an impartial jury is applicable to the state. Obviously the jury is not impartial if the jurors become, witnesses *1008 against the defendant as a result of their outside investigations. Thus, the constitutional argument in Parker coupled with Duncan would seem to make the DeLucia result correct even if the reliance on Parker was misplaced."
Other jurisdictions recognize that an unauthorized view by the jury is a ground for reversal, a new trial or a mistrial, but, unlike the New York court, require that prejudice be shown. See Annotation, Unauthorized View of Premises by Juror or Jury in Criminal Case as Ground for Reversal, New Trial or Mistrial, 58 ALR2d 1147 (1958) and Later Case Service.
Although De Lucia and the cases cited in the annotation all deal with an actual view of the scene of the crime, the same rules should apply to a re-enactment of the alleged crime at a place only "simulating" the actual surroundings where the crime is alleged to have occurred. In the latter case, there is an even greater need for confrontation and cross-examination to expose relevant dissimilarities in the two scenes, etc.
In the present case, if the foreman of the jury did what he is alleged to have done, the action was prejudicial. Evidence was acquired without judicial supervision, and evidence which goes to the heart of the accused's defense.
The question thus becomes whether the trial judge abused his discretion in denying a new trial after hearing the testimony of the automobile dealer. The writer tends to think that the testimony of the dealer alone was sufficient to establish prohibited conduct on the part of the jury foreman, which should require a new trial. However, this is certainly open to question, because the physical acts of the foreman testified to by the automobile dealer could just as well represent conduct unrelated to the case. For this reason, the testimony of the foreman was really crucial to positively establish conduct which denied defendant his constitutional rights. Should the jury foreman have been permitted to testify despite the prohibition of La.R.S. 15:470?
The New York high court in De Lucia, above, faced an identical jurisprudential rule that statements by jurors impeaching their own verdicts are inadmissible. However, the court in that case reasoned that the constitutional rights of the defendant outweigh the policy considerations in favor of the non-impeachment rule where, as in De Lucia and the instant case, "outside influences" come to bear on the jury. I would agree.
I would distinguish State v. Johanson, 332 So.2d 270 (La.1976) and the cases cited therein holding that the policy of La.R.S. 15:470 (incompetency to impeach verdict) prevails over that of La.Code of Crim.Proc. art. 793 forbidding the taking of notes by jurors. Although La.R.S. 15:470 can reasonably be held to override the statutory prohibition of notetaking, it should not be held to prevail over a defendant's constitutional rights to confrontation of witnesses against him and to an impartial jury, constitutional guarantees of a fair trial.
NOTES
[1] The jurors were not sequestered during the course of the trial.
[2] While this prohibition is well settled in Louisiana, in a limited number of cases this court has recognized that a juror may be competent to testify as to certain improprieties. See State v. Kifer, 186 La. 674, 173 So. 169 (1937) (on motion to quash, the testimony of grand jurors that the district attorney and his assistant were present in the grand jury room during deliberations and the voting on the indictment was held admissible); State v. Bischoff, 146 La. 748, 84 So. 41 (1920) (in dicta the court indicated that if a charge of the use of force or violence on the jurors was made which induced a juror to render a verdict to which he did not willingly agree, a juror might be permitted to testify). See also Parker v. Gladden, 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966). However, the case before us now is not one of these exceptional circumstances.