■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES BROWN, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered June 15, 1976, convicting him of robbery in the first degree and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence. Judgment affirmed. Defendant's conviction arose out of an armed robbery at a store in Queens on October 22, 1974, at about 7:00 P.M. Three officers, who were on plainclothes patrol in a brown, unmarked GMC van, observed three males in a green 1967 Oldsmobile sedan cruising slowly and peering into windows. Eventually, the car parked near a candy store. The two passengers got out, went into the store and, according to the testimony of the store's owner, took all of her money. The two men ran to the waiting green car and the police gave chase. The police van rammed the car. A gunfight ensued and the three suspects escaped. The car was eventually traced to defendant's father-in-law and then to defendant, to whom the former had lent the car. The most damaging testimony against defendant came from one of the officers who was sitting in the rear of the police van. He testified that during the initial surveillance of the green car, the van and the car stopped for a red light and the van pulled a little more than midway along the driver's side of the green car. The officer testified that he looked down through his window at the driver of the car (the van is approximately three to five feet higher than a standard American car) and saw defendant's face clearly. The detective looked at the defendant for the duration of the red light (about 37 seconds) and, during that time, defendant turned his head toward the detective. Defendant was convicted of robbery in the first degree and reckless endangerment in the first degree. A month after the verdict was rendered, defense counsel moved to set it aside. In his affirmation, counsel alleged that as a result of a conversation he had had with two of the jurors, he learned that one of them had "performed scientific tests in that she took her van to the same location under conditions simulating those described by [the] Detective". The trial court granted a hearing to determine the nature and extent of defendant's

allegations. The juror in question testified that she owned a Volkswagen van. During the course of the trial, she was in her van and placed herself in the position described by the detective and looked out of the window. From the van window she could see the driver of the American car traveling parallel to her. She further stated that the test was not "preplanned" and that she never went to the scene of the robbery. She denied ever telling the jury that the detective could be believed based upon her independent tests. Finally, she stated that she did not recall reporting her observations to her fellow jurors during the trial or the deliberations. The testimony of this juror was corroborated by a second juror who testified that the former "never said anything about time and * * * never said anything about location. She mentioned that she had a van and looked through the window. Those are the only two things that I am sure she said." This second juror also stated "that [the test] was a minor detail that did not impress me as much as other things did." At one point during the hearing, this juror testified that the other juror told her colleagues about her observations "after the verdict", but later on during the hearing she stated, "I it may have been during the deliberations or after the verdict * * * I really don't remember." In denying defendant's motion for a new trial, the trial court emphasized three points: (1) The juror in question denied taking her van to the same location and thus complied with his directive not to visit the scene of the crime; (2) The alleged test was not preplanned or prearranged, but was merely a common everyday experience of said juror, and the juror's action was in accordance with the instructions of the court to use common sense and everyday experience; and (3) There had been no prejudicial outside influences brought to bear on the jury's deliberations, citing *People v De Lucia* (20 NY2d 275). We agree with the trial court's ruling on this issue. Apart from the lack of convincing proof that the alleged test was described prior to the verdict, the hearing testimony clearly demonstrated that the juror spontaneously drew on a common everyday situation with which she was familiar, in order to test the detective's veracity. Accordingly, no reversible error was committed in this regard. Finally, we are aware of the case of *Bulger v McClay* (575 F2d 407). Bulger was accused of stealing cigarettes from a grocery store in Staten Island in the early morning hours of September 24, 1974. An eyewitness testified that Bulger participated in the theft and that a brown bag taken from the store was secreted under a car. The witness called the police and Bulger was apprehended while waiting at a bus stop near the crime scene. During the trial, it became apparent that Bulger's justification for being in the area was a significant issue in the case. In summation, the prosecutor stated (p 409): "So what's the reason for him standing on the bus corner? He said I am going to work; that's his story, believe it or not, it's up to you, you got to believe that at four in the morning he's standing with a dark-haired fellow and they are going to work." In its charge, the trial court cautioned the jurors not to read newspaper accounts of the case. The jury convicted Bulger of burglary in the third degree. In a posttrial affidavit, defense counsel deposed that juror number four admitted to him that he changed his vote after one of the other jurors mentioned a newspaper article that had been published over the prior weekend. The newspaper story contained Bulger's address, which was set forth as being quite distant from the scene of the crime. According to counsel, this newspaper item rendered Bulger's excuse for being in the area highly improbable. Based on this disclosure, Bulger's counsel moved for a hearing and a new trial on the ground that prejudicial information dehors the record had tainted the jury's deliberations. In response to the motion,

the trial court called juror number four and questioned him under oath. The juror indicated that Bulger's home address was not mentioned during the deliberations. After the trial court established this fact to its own satisfaction, it did not allow defense counsel to cross-examine the juror, although such a request was made. The trial court then denied the motion for a new trial. Bulger unsuccessfully appealed in the State courts, arguing that the failure to hold an adequate hearing violated his constitutional rights of due process and confrontation. Bulger filed a petition for a writ of habeas corpus in the Federal District Court. A hearing was conducted in the District Court. Although subpoened, juror number four failed to appear. However, another juror did testify that during the deliberations, a juror mentioned Bulger's home address (it was conceded that Bulger's address was not introduced at his trial) and that it became a subject of much discussion. The Federal District Court granted the writ. The District Court found that the State court hearing was inadequate, that the jurors learned of Bulger's address during their deliberations and that this information was no doubt critical to the determination of guilt. In affirming the granting of the writ, the Circuit Court of Appeals initially held that the hearing conducted by the trial court was neither full nor fair, but cursory at best, and that the trial court's failure to allow any cross-examination only aggravated its own inadequate examination. The Circuit Court of Appeals then went on to hold that there was sufficient evidence adduced before the District Court to warrant the latter's finding that the newspaper article containing Bulger's address which was dehors the record, was impermissibly imparted to the jury and that this information influenced the jury. In our view, *Bulger* is inapposite to the case at bar. Apart from the fact that the information imparted to the jury was fundamentally different between the case at bar and *Bulger* (i.e., reliance upon everyday experience and knowledge as opposed to information derived from a purely outside source), the major flaw in *Bulger* is not present in the case at bar. In *Bulger,* the trial court conducted a cursory hearing and did not even allow cross-examination. In contrast, in the case at bar, the trial court held a full hearing where the jurors in question were cross-examined and the court made explicit findings thereafter. Accordingly, defendant's argument in this regard must be rejected. We have reviewed the remaining points raised by the defendant and find them to be without merit. Hopkins, J. P., Damiani, Titone and Suozzi, JJ., concur.