The People of the State of New York, Respondent, v James Lavender, Appellant.

First Department, May 22, 1986

## APPEARANCES OF COUNSEL

*Alan Dimant* of counsel *(Steven R. Kartagener* with him on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

*Andrew E. Abraham* of counsel *(Philip L. Weinstein,* attorney), for appellant.

## OPINION OF THE COURT

ROSENBERGER, J.

After hearing testimony for something less than four days, the jury in this case commenced its deliberations close to noon on February 6, 1984. After deliberations and a rereading of some testimony, the jurors went to a hotel at about 11:00 P.M. that night. Deliberations resumed at about 10:00 the next morning. At 11:45 that morning, the jurors sent the court a note stating: "We are deadlocked at 11-1 and the one person feels that there is not enough evidence in the case to make a decision." At 2:55 P.M. the court showed the note to the attorneys. The defendant's attorney moved for a mistrial. The motion was denied by the court. The court advised the jurors to continue their deliberations. Several additional notes were received from the jurors during the course of the afternoon and evening. Three of them were of the tenor of complaint regarding the lone "hold out" juror.

Defense counsel once again moved for a mistrial. The court recharged the jury regarding burglary in the first degree, and added an *Allen* charge. The defendant's attorney objected to the *Allen* charge as coercive and renewed his motion for a mistrial. He maintained that the further instruction was clearly aimed at the lone juror who was voting for acquittal. The motion was denied. At the end of the second day of deliberation, the defendant's attorney once again renewed his motion for a mistrial. The motion was again denied and the jury was sent to a hotel for the night.

The jury resumed its deliberation at 10 o'clock the next morning. The jury sent the court two notes, one at 10:21 A.M. and the other at 11:02 A.M. Each of these notes complained about the lone juror. Each of them asked the court for advice on how to proceed. At 11:45 A.M., the court showed the attorneys the aforesaid notes. For the fourth time, defense counsel moved for a mistrial. The court denied the motion, indicating it would entertain the application again at 2:30 P.M.

The court then advised counsel that the jurors had been given a 15-minute break outside the jury room at 12:06 P.M.

At 2:04 P.M., a note was received from the "hold out" juror. In this note, the juror complained about the actions of another juror. She stated, *inter alia:* "Today she threatened me and came at me ready to attack me with violence. Had not the jurors held her back she would have struck me. She virtually arose from her chair from the other corner of the room and came at me with her fists. This is a very bad action for a juror to take when a person wishes to express an opinion and everyone should respect that opinion whether it is to their liking or not." The defense attorney once again unsuccessfully moved for a mistrial. Shortly thereafter, the jury announced its verdict.

None of the three notes sent by the jury on its last day of deliberation were responded to by the court. After the second note of the day had been received, there was a conference, in the robing room, between the court and counsel for both sides. It concluded with the following exchange between the prosecutor and the court:

"[ASSISTANT DISTRICT ATTORNEY]: But they are asking for advice.

"THE COURT: The only thing I can do is read to them what I read to them at 7 o'clock [the previous evening].

"[ASSISTANT DISTRICT ATTORNEY]: It seems to me that the jury is waiting for something from the Court.

"THE COURT: I do not intend to address them. I intend to tell them nothing. I intend to let them have their food and continue their deliberations.

"[ASSISTANT DISTRICT ATTORNEY]: Yes sir.

"THE COURT: All Right."

This exchange followed the denial of the fourth application for a mistrial by the attorney for the defendant.

The trial court has no discretion as to whether or not to answer a proper question from a jury. *(People v Malloy,* 55 NY2d 296 [1982], *cert denied* 459 US 847 [1982]; *People v Miller,* 6 NY2d 152 [1959]; *People v Gezzo,* 307 NY 385 [1954]; *People v Lupo,* 305 NY 448 [1953]; *People v Gonzalez,* 293 NY 259 [1944]; CPL 310.30.) There was a clear obligation on the part of the court to respond to the jury's pleas for guidance. The court's refusal to respond was error.

It is a long-standing rule that testimony of jurors is not

ordinarily competent to impeach the duly rendered verdict of the jury. *(People v De Lucia,* 20 NY2d 275 [1967]; *People v Sprague,* 217 NY 373 [1916].)* There are, of course, exceptions to this rule. *(People v De Lucia, supra.)* We deal here, however, with a statement made by a juror, not after the jury has rendered its verdict, but during the course of deliberations. Thus, the concern regarding posttrial harassment of jurors *(People v De Lucia, supra)* or of "second thoughts" by jurors is not present. In the instant case, a juror told the court about a genuine, perceived, physical coercion of herself by another juror.

The dissent cites *People v Jacobson* (109 Misc 2d 204 [Sup Ct, Bronx County 1981], *affd* 89 AD2d 826 [1st Dept 1982], *lv denied* 57 NY2d 781 [1982]) and *Jacobson v Henderson* (765 F2d 12 [2d Cir 1985]). In both of those opinions (dealing with the same trial), the courts noted that the jurors had had the opportunity to communicate their concerns to the trial court but had not done so. The Court of Appeals observed (765 F2d, at p 15): "[T]he complaining jurors had several opportunities to communicate directly with the court if any of them felt unfairly coerced, harassed, intimidated, or felt themselves to be in physical danger." The Supreme Court noted "[T]his court rejects the claim that the jurors could not transmit their fears to the bailiff or the court. They did not see fit to do so until prodded by a representative of the defendant some four weeks to six months later" (109 Misc 2d, at p 211). The situation here, as previously noted, is different. The complaining juror did, before the verdict was announced, report directly to the court that she had been coerced, harassed, intimidated, and felt herself to be in physical danger.

*Stein v New York* (346 US 156, 178 [1953]), also cited in the dissent, holds that statements by jurors may not ordinarily be used to impeach a verdict *once the jury has been discharged.* In the instant case, the juror's statement had been transmitted to and received by the court prior to the discharge of the jury and, in fact, prior to the report of the verdict.

This court has said that "[t]he court has the * * * duty to protect its officers. This duty embraces the obligation not to subject counsel to unnecessary personal risk." *(Matter of Legal Aid Socy. v Rothwax,* 69 AD2d 801 [1st Dept 1979].)* The court has at least as great a duty to protect those citizens of the State who are "drafted" and properly respond to a subpoena summoning them for jury service.

The verdict here was the result of coercion. A juror was threatened with assault by another juror, which threat was reported to the court but ignored by it. The juror thereupon acquiesced in a conviction. Such a verdict should not be permitted to stand. In light of this result, it is unnecessary to reach the appellant's other contentions.

Accordingly, the judgment of the Supreme Court, Bronx County (Cerbone, J.), rendered March 19, 1984, which convicted defendant of attempted rape in the first degree, and sentenced him, as a persistent violent felony offender, to an indeterminate term of imprisonment of 25 years to life, should be reversed, on the law, and the matter remanded for a new trial.

Ross, J. (dissenting). I respectfully disagree with the majority and would affirm the judgment.

In substance, the testimony at trial can be summarized as follows:

The People's case, in large measure, depended upon the testimony of the victim, who at the time of the incident had been employed as a chambermaid for approximately 6½ years by the 216th Street Motel (Motel), located in Bronx County; and Robert Vasquez (Mr. Vasquez), the Motel desk clerk. In pertinent part, the victim testified that: on August 18, 1983, her hours of employment were midnight to 8:00 A.M.; at approximately 1:00 A.M., Mr. Vasquez directed her to clean room number 8; a couple of minutes after she began cleaning that room, the defendant came into that room unannounced; and, once in the room, the defendant, *inter alia,* allegedly threatened to kill her if she screamed, pressed a knife to her neck, pushed her down on the bed in the room, and attempted to rape her. Furthermore, in pertinent part, Mr. Vasquez testified that in response to hearing the victim scream, he burst into the room, and allegedly saw the defendant on top of the victim, with his pants around his knees and pointing a knife at the victim.

The defendant's defense directly contradicted the People's case. This defense was based upon the defendant's own trial testimony. In pertinent part, defendant testified that: the victim solicited defendant in that room by offering to perform fellatio for $10; defendant agreed to the offer; in the room, the victim allegedly performed the aforementioned sexual act for $10; after the act's completion, the victim allegedly demanded $10 more, which defendant refused to pay; thereafter, the

victim allegedly screamed, and Mr. Vasquez came in, holding a bat, and told defendant to pay; when defendant still refused to pay more money, he was allegedly attacked by both the victim with a knife, and Mr. Vasquez with the bat, mentioned *supra;* and, defendant managed to escape from the room.

It is undisputed the police were promptly informed of the incident and the defendant, who lived in the neighborhood, was quickly arrested.

From the foregoing synopsis of the testimony, it is obvious that the key issue was the credibility of the witnesses.

Based upon the facts that: (1) the defendant concedes, at page 39 of his appellate memorandum, that this trial lasted nine days; (2) the transcript of trial is over 700 pages long; (3) the jury had read back to them at their request, the entire testimony of the defendant and the victim; (4) the jury submitted a number of questions to the trial court; and (5) the jury requested that the trial court reinstruct them on the law concerning a count in the indictment, I do not find excessive, as a matter of fact or of law, the amount of actual time, which was approximately between 15 to 18 hours, that the jury deliberated before reaching a verdict in the instant case.

While the jury was deliberating, the defense trial counsel moved, a number of times, for a mistrial, upon the basis that the jury was hopelessly deadlocked, and should be discharged; and, on each of these occasions the trial court denied that relief. In the case before us, the court's denial of the motion for mistrial was not an abuse of discretion. After examining the jury deliberations as reflected by the record, I find that the trial court did not err by allowing the jury to resolve its internal differences, and reach a verdict. The positions of the jury members were flexible and not irreconcilable, in view of the fact that over the course of the deliberations, the vote of the jurors changed at least five times. A unanimous Court of Appeals held in *Matter of Plummer v Rothwax* (63 NY2d 243, 250 [1984]), that: "The decision to declare a mistrial necessarily rests in the broad discretion of the Trial Judge *(Hall v Potoker,* 49 NY2d 501, 505; see, also, *People v Ortiz,* 54 NY2d 288, 292; *Illinois v Sommerville* [410 US 458], at p 462) who is best situated to take all the circumstances into account and determine whether a mistrial is in fact required in a particular case *(People v Michael,* 48 NY2d 1, 9; *Gori v United States,* 367 US 364, 368)".

The majority, at page 255 of their opinion, contend that the

quoted excerpt from the transcript of trial that follows, in substance, indicates that the trial court erred by failing to answer a proper question from the jury. This excerpt relates to a number of notes received by the trial court from the jury on the final day of deliberation. The excerpt reads, in pertinent part:

"[ASSISTANT DISTRICT ATTORNEY]: But they [the jury] are asking for advice.

"THE COURT: The only thing I can do is read to them what I read to them at 7 o'clock [the previous evening].

"[ASSISTANT DISTRICT ATTORNEY]: It seems to me that the jury is waiting for something from the Court.

"THE COURT: I do not intend to address them. I intend to tell them nothing. I intend to let them have their food and continue their deliberations.

"[ASSISTANT DISTRICT ATTORNEY]: Yes sir.

"THE COURT: All Right."

I agree with the general proposition stated by the majority that the trial court has a duty to answer a proper question from the jury. However, based on my review of the record, I disagree with the conclusion of the majority that the trial court erred by refusing to answer any *questions* from the jury, since I find that all *proper questions* from the jury were responded to by the trial court. To require the trial court to keep repeating the same charge numerous times is not required.

Approximately a half hour before the jury reached its unanimous verdict of guilty, juror number 8 sent a note to the trial court that read in pertinent part:

"One particular juror from the very beginning of our deliberation, has continually at various times humiliated me calling me stupid—made anti-semetic *[sic]* remarks—called me a bitch and interrupted me everytime *[sic]* I gave an opinion which was not to her liking. When we left for the hotel * * * she continued to harass me with dirty looks and always mumbled at me. Today she * * * threatened me and came at me ready to attack me with violence. Had not the other jurors held her back she would have struck me. She * * * virtually arose from her chair from the other corner of the room and came at me with her fists.

"This is a very * * * bad action for a juror to take—when a person wishes to express an opinion—and everyone should respect that opinion whether it's to their liking or not.

"She in my opinion is not fit for serving on a jury. She has continually humiliated me."

Within approximately 15 minutes of receiving this note from juror number 8, quoted *supra,* the trial court received a note from another juror, which read, in pertinent part:

"Since Monday juror has not followed instructions. Juror has no regard for Court of Law given. Also juror has:

"1. Harrassed *[sic]* jurors

"2. Lied

"3. Forming her own stories

"4. Personal Conflict Towards me

"5. I was not allowed to voice or reason evidence in case

"6. Has abused me & lied that I used obsene *[sic]* language to her I feel this is a dafamation *[sic]* against my character I've been a juror for 15 years never had a problem until now I got along with everyone & still do".

As mentioned *supra,* these two notes were received by the trial court within a half hour before the jury reached its verdict. After the foreman announced the verdict of guilty, each juror was polled, and, in particular, when the court clerk asked the question: "Is that your verdict, number 8?", juror number 8, without making any complaint to the trial court about being coerced into a verdict, unequivocally answered, "Yes".

Heated discussions between jurors during their deliberations are not unusual, and, in fact, are quite common.

Very recently the United States Circuit Court of Appeals for the Second Circuit, in *Jacobson v Henderson* (765 F2d 12 [2d Cir 1985]), had occasion, in affirming a denial by a Federal District Court of a petition for a writ of habeas corpus, to reject a defendant's claim that his Bronx County judgment of conviction for murder in the second degree should be vacated, upon the ground that he was denied a fair trial, since allegedly three of the jurors were coerced by their fellow jurors into voting for a guilty verdict. The court in *Jacobson (supra)* held in a Per Curiam opinion that the defendant's claim of juror coercion was meritless, since defendant did not show that this alleged juror coercion was the result of either *extraneous* or *outside* influence that had invaded the jury room. Furthermore, the court noted, in *Jacobson (supra,* at p 15) that each one of the three allegedly coerced jurors, when they were polled as to their guilty verdict, "affirmed the verdict", with-

out complaint. Finally, the court set forth in *Jacobson (supra,* at p 14) with reference to the alleged juror coercion, the following: "After the filing of an indictment on May 28, 1979, charging petitioner [defendant] with murder in the second degree, he was tried before a judge and jury in New York Supreme Court, Bronx County * * * It is alleged that, during the course of jury deliberations, there was screaming, hysterical crying, fist banging, name calling, and the use of obscene language. One of the jurors allegedly threw a chair at another, then 'broke down,' crying and claiming that he was a 'sick man.' It is further alleged that the jury foreman 'refused' to notify the trial judge of these incidents although he was requested to do so by other jurors, and that at one point a court officer upon hearing the noise in the jury room opened the door and asked if anyone needed help, to which the foreman replied: 'It's all right, we can handle it' * * * [A]fter the jury verdict was returned, petitioner moved in the state court, upon the affidavits of three jurors, to vacate the judgment because of jury misconduct. Juror Michael Speller, in an affidavit * * * alleged that he 'changed [his] vote to guilty out of fear', juror Bernice Foust, in an affidavit * * * mentioned the use of notes by one of the other jurors, the use of foul language, and the chair-throwing *[sic]* incident; juror Rose Kovnit, in an affidavit * * * essentially repeated the allegations of the Speller affidavit".

The trial court, as mentioned *supra,* considered defendant Jacobson's allegation of juror coercion *(People v Jacobson,* 109 Misc 2d 204 [Sup Ct, Bronx County 1981, William Kapelman, J.]). Subsequent to reviewing that allegation, the trial court found it without merit, upon, among other things, the case law *(Stein v New York,* 346 US 156, 178 [1953]) that holds that, absent evidence of extraneous or outside influence, statements by jurors may not be used to impeach a verdict once a jury has been discharged. *People v Jacobson (supra)* was affirmed, without opinion (89 AD2d 826 [1st Dept 1982]). Subsequently, leave to appeal to the Court of Appeals was denied by that court (57 NY2d 781 [1982]).

It is the law of this State that the testimony or "affidavits of jurors are not competent to impeach their verdict which has been solemnly made, and publicly returned into court" *(Payne v Burke,* 236 App Div 527, 529 [1932]; *also see, People v Brown,* 48 NY2d 388, 393 [1979]; *People v Sprague,* 217 NY 373, 381 [1916]; Richardson, Evidence § 407 [10th ed 1973]). This rule is founded on the sound public policy that, if a juror is compe-

tent to impeach his verdict by revealing what went on during deliberations, the "result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference" *(McDonald v Pless,* 238 US 264, 267-268 [1915]). My research fails to indicate a single appellate decision in this State that holds that an inquiry can be made into how jurors talk to each other in the jury room. Recently, the Court of Appeals, in the case of *People v Pickett* (61 NY2d 773, 774 [1984]), held that: "communications among the jurors that were a part of their deliberative process in attempting to reach a verdict on the issues they were charged to decide * * * were secret and not to be disclosed".

The rare exception to this general rule, about jurors not being competent to impeach their own verdicts, occurs when the jury's deliberation is affected by an outside influence *(e.g., Parker v Gladden,* 385 US 363 [1966], where the jurors could impeach the verdict, on the basis of an improper communication from a bailiff, who was an outside influence; *People v Brown, supra,* where a juror performed an experiment on her own and reported the results to the jury, and, this contrived experiment was deemed an improper influence; *People v Crimmins,* 26 NY2d 319 [1970], where the jurors made an unauthorized visit to the crime scene, and this visit was deemed an improper influence). The instant case clearly does not fall within this rare exception, in view of the fact that nowhere does juror number 8 contend that she was subject to "outside influences". It is undisputed that the alleged harassment that juror number 8 complains about occurred entirely within the jury room and between the members of the jury, while deliberations were taking place.

The majority offers no relevant legal authority that holds that a trial court is justified in disturbing jury deliberations, upon the basis of receiving a juror's note that alleges that she was threatened at some earlier point in the deliberations by another juror, but which note does not either complain of extraneous or outside influences from outside the jury room. Significantly, as mentioned *supra,* this juror, like the three jurors in the case of *Jacobson v Henderson (supra)* affirmed her verdict of guilty, when polled, without complaint. Examination of the instant juror's note, quoted *supra,* to the trial court, in my opinion, does not evidence such physical fear of another juror as would warrant the relief sought by appellant.

The Court of Appeals stated in *People v De Lucia* (20 NY2d

275, 278 [1967]) "Common experience indicates that at times articulate jurors may intimidate the inarticulate, the aggressive may unduly influence the docile. Some jurors may 'throw in' when deliberations have reached an impasse. Others may attempt to compromise. Permitting jurors to testify regarding such occurrences would create chaos".

In passing, I note that the defendant alleges that the trial court's *Allen* charge *(Allen v United States,* 164 US 492 [1896]) deprived him of a fair trial. After my examination of the charge, I conclude this allegation is without merit *(see, People v Pagan,* 45 NY2d 725 [1978]).

Accordingly, the judgment should be affirmed.

KUPFERMAN, J. P., and KASSAL, J., concur with ROSENBERGER, J.; SULLIVAN and ROSS, JJ., dissent in an opinion by ROSS, J.

Judgment, Supreme Court, Bronx County, rendered on March 19, 1984, reversed, on the law, and the matter remanded for a new trial.