OPINION
{¶ 1} This matter comes for consideration upon the record in the trial court and the parties' briefs. Appellant Mark Brown appeals the judgment of the trial court granting summary judgment in favor of the State on his post-conviction petition. Brown presents this court with three arguments concerning the dismissal.
 {¶ 2} First, Brown argues his post-conviction counsel was ineffective when filing his petition, however, the Sixth Amendment right to effective assistance does not extend to civil post-conviction relief proceedings. Accordingly, Brown's first claimed error is meritless.
 {¶ 3} Second, Brown asserts that his right to a fair and impartial jury was violated by an impermissibly coercive "dynamite" charge given by the trial court. He claims the charge led members of the jury to coerce another member into agreeing with the sentencing verdict. However, the only evidence Brown could present in support of this claim was testimony of the juror herself. Because that type of evidence is inadmissible under Evid. R. 606(B), Brown's second claim is meritless.
 {¶ 4} Finally, Brown claims his trial counsel was ineffective for obtaining a prejudicial comment from his mother regarding his membership in a gang. This statement was then handed over to the prosecution during discovery who then used the statement during trial. Because trial counsel obtained the statement due to a reasonable strategy of obtaining mitigating evidence, Brown's third and final claim must also fail. Thus, we affirm the judgment of the trial court.
 1. Facts {¶ 5} Brown's case was originally tried and submitted to a jury. The jury found Brown guilty on two counts of aggravated murder by prior calculation and design. For these counts, the jury returned guilty verdicts on the death penalty specifications. In addition, the jury returned guilty verdicts on the firearm specification attendant to the two aggravated murder counts.
 {¶ 6} The jury then began its penalty phase deliberations and within a day informed the trial court that it had reached an agreement on one of the recommendations but was deadlocked as to the other. The trial court read the Howard charge to the jury and instructed it to continue its deliberations. The jury returned its verdict, recommending death for the killing of one of the two victims and life imprisonment for the killing of the other. The jury was polled, during which one juror, Ella York, stated that the verdicts were not her own and that she had compromised with the other eleven jurors. Thereafter, the trial court re-read the original charge to the jury. Several hours later the jury returned the same verdict as before. When the jury was polled, Juror York stated that the verdicts were hers and the jury was discharged.
 {¶ 7} The trial court sentenced Brown to death for the murder of one of the victims and to life imprisonment without eligibility for parole for thirty years for the other. In addition, the trial court sentenced Brown to three years incarceration on the two firearm specifications, all sentences to run consecutively. Brown filed a timely notice of appeal. This court upheld Brown's convictions in State v.Brown (Jan. 30, 2001), 7th Dist. No. 96 C.A. 56. He then appealed to the Ohio Supreme Court where his case remains pending.
 {¶ 8} Brown then filed a petition for post-conviction relief. In response, the State filed a motion for summary judgment requesting the dismissal of the petition. The trial court granted the State's motion and the petition was dismissed without a hearing. It is from that judgment Brown now appeals.
 2. Qualified Versus Effective Post-Conviction Counsel {¶ 9} As his first of two assignments of error, Brown alleges:
 {¶ 10} "The trial court's dismissal of appellant's post-conviction proceeding must be reversed and appellant's case be remanded to the trial court with instructions that qualified counsel be appointed and that appellant be granted sufficient time and resources to file a properly supported post-conviction petition in order to preserve appellant's due process rights under the fourteenth amendment to the United States the Ohio Legislature has acted (sic) to ensure that death sentenced post-conviction petitioners are represented by competent counsel."
 {¶ 11} Although Brown's assignment of error appears to describe a violation based upon the lack of qualified counsel, Brown's argument revolves around a claim of ineffective assistance of post-conviction counsel. This distinction is significant in that a defendant at this particular stage can seek relief under a claim of unqualified counsel but cannot seek relief under a claim of ineffective assistance of counsel.
 {¶ 12} It is well established that the Sixth Amendment to the United States Constitution provides a right to the effective assistance of counsel in criminal proceedings. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. However, that right does not extend to civil post-conviction relief proceedings. State v. Scudder
(1998), 131 Ohio App.3d 470, 722 N.E.2d 1054; State v. Jackson (June 30, 1998), 10th Dist. No. 97APA12-1660.
 {¶ 13} "`Unlike a criminal defendant, a civil litigant has no constitutional right to the effective assistance of counsel.' Goldfussv. Davidson (1997), 79 Ohio St.3d 116, 126, 679 N.E.2d 1099, 1106. Accordingly, although the General Assembly felt it appropriate to grant indigent post-conviction petitioners access to appointed counsel, it was not required to do so, nor was it required to guarantee the effective assistance of counsel." Scudder at 474. As demonstrated by R.C.2953.21(I)(2), the General Assembly specifically prohibited collateral attacks upon counsel's effectiveness:
 {¶ 14} "The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal." Id.
 {¶ 15} The Scudder court found this language to mean a defendant has no right to the effective assistance of post-conviction counsel. Id. at 474. Other courts have reached the same conclusion. For example, inState v. Lott (May 30, 2002), 8th Dist. Nos. 79790, 79791, and 79792, the Eighth District found there to be no constitutional right to counsel, effective or otherwise, in state post-conviction proceedings. See also Inre Scharf (Sept. 30, 2002), 6th Dist. No. OT-01-044; State v. Sheppard
(Feb. 21, 2001), 1st Dist. No. C-000387; State v. D'Amborsio (Mar. 16, 2000), 8th Dist. No. 75076; State v. Haliym (Mar. 12, 1998), 8th Dist. No. 72411.
 {¶ 16} Likewise, in Coleman v. Thompson (1997), 501 U.S. 722,752, 111 S.Ct. 2546, 115 L.Ed.2d 640, the United States Supreme Court held that "[b]ecause there is no constitutional right to an attorney in state post-conviction proceedings, see, e.g., Pennsylvania v. Finley,481 U.S. 551, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings, see Wainwright v. Torna,455 U.S. 586." Coleman at paragraph (f) of the syllabus.
 {¶ 17} Earlier, in Pennsylvania v. Finley 481 U.S. 551,107 S.Ct. 1990, 95 L.Ed.2d 539, the United States Supreme Court determined that the constitution did not impose specific procedural requirements on a right to counsel created by operation of Pennsylvania law in the post-conviction context.
 {¶ 18} "[I]n this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure post-conviction review. In Pennsylvania, the State has made a valid choice to give prisoners the assistance of counsel without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position — at trial and on first appeal as of right. In this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines annunciated in Anders." Id. at. 558, 559.
 {¶ 19} In light of Finley, it appears that, because the legislature clearly barred any challenges of post-conviction counsel's ineffectiveness, Brown has no recourse under the statute to assert that claim. This is not to say, however, that Brown would have been prohibited from challenging counsel's qualifications under Sup.R. 20. As Brown points out, pursuant to 2953.21(I)(2):
 {¶ 20} "The court shall appoint as counsel under division (I)(1) of this section only an attorney who is certified under Rule 20 of the Rules of Superintendence for the Courts of Ohio to represent indigent defendants charged with or convicted of an offense for which the death penalty can be or has been imposed."
 {¶ 21} Thus, we hold that while appointed counsel must bequalified to file a capital post-conviction petition, there is no requirement that they be effective. Because Brown did not challenge his attorney's qualifications, Brown's first assignment of error is meritless.
 3. Summary Judgment Dismissing Post-Conviction Petition {¶ 22} As his second assignment of error, Brown asserts:
 {¶ 23} "The trial court erred in granting summary judgment against Appellant Brown and dismissing his postconviction action in violation of Appellant's rights under Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution."
 {¶ 24} Brown avers the trial court improperly dismissed his petition via summary judgment since he presented sufficient operative facts and supporting evidence de hors the record to merit an evidentiary hearing. However, a criminal defendant seeking to challenge his conviction through a petition for post-conviction relief is not automatically entitled to a hearing. State v. Cole (1982),2 Ohio St.3d 112, 113, 443 N.E.2d 169. "Before granting an evidentiary hearing on the petition, the trial court shall determine whether there are substantive grounds for relief (R.C. 2953.21[C]), i.e., whether there are grounds to believe that `there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.' R.C.2953.21(A)(1)." State v. Calhoun (1999), 86 Ohio St.3d 279, 282-83,714 N.E.2d 905. Therefore, before a hearing is granted, the petitioner bears the initial burden of submitting evidentiary documents containing sufficient operative facts that demonstrate the merit of his claims. Id.
 {¶ 25} With regard to the standard of review of a trial court's summary dismissal of a post-conviction petition, this court recently held in State v. Reynolds, 7th Dist. No. 99-CO-48, 2002-Ohio-135:
 {¶ 26} "The trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. Judgments will not be reversed, as being against the manifest weight of the evidence if they are supported by some competent, credible evidence.Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, 638 N.E.2d 533;C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus. Upon accepting such findings of fact, an appellate court then independently determines the propriety of the trial court's conclusions of law." Id. at 3. (footnote omitted)
 A. Jury Claim {¶ 27} In his petition for post-conviction relief, Brown first alleged that his right to a fair and impartial jury was violated by an impermissibly coercive "dynamite" charge given by the trial court. He claims the charge led members of the jury to coerce another member into agreeing with the sentencing verdict. In support of this claim, Brown provided the trial court with an affidavit of juror Ella York claiming she was coerced and pressured by other jurors to return a verdict.
 {¶ 28} It is a longstanding rule that "the verdict of a jury may not be impeached by the evidence of a member of the jury unless foundation for the introduction of such evidence is first laid by competent evidence aliunde, i.e., by evidence from some other source."State v. Reiner (2000), 89 Ohio St.3d 342, 731 N.E.2d 662,2000-Ohio-190, citing State v. Adams (1943), 141 Ohio St. 423, 427,48 N.E.2d 861. Ohio has adopted this rule in Evid.R. 606(B), which states:
 {¶ 29} "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented. However a juror may testify without the presentation of any outside evidence concerning any threat, any bribe, any attempted threat or bribe, or any improprieties of any officer of the court. His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." Id.
 {¶ 30} Here, Brown argues the evidence from some other source would be the transcript of the penalty phase in which York disavowed the jury verdicts. Brown claims that, "[t]he clear repudiation of the verdicts by Ella York in open court is evidence aliunde that improper influence was brought to bear on her to change her verdict during deliberations."
 {¶ 31} The Ohio Supreme Court was faced with a similar question involving alleged juror misconduct in State v. Hessler (2000),90 Ohio St.3d 108, 734 N.E.2d 1237. In Hessler, the defendant claimed that a dialogue between the court and a reluctant and obviously distraught juror demonstrated that the juror wanted to vote for life sentences but was unfairly coerced and pressured to vote for death. Because the other jurors allegedly pressured this juror into changing her vote, the defendant argued he was denied the right to a fair and impartial jury because of juror misconduct. However, after reviewing the record, the Ohio Supreme Court could not say that juror misconduct occurred explaining:
 {¶ 32} "`The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.'Allen v. United States (1896), 164 U.S. 492, 501, 17 S.Ct. 154, 157,41 L.Ed. 528. The requirement of a unanimous decision, however, does not come without a price. Heightened emotions and intense feelings are part and parcel of this process. Experience tells us that during deliberations, it is not unusual to find heavy-handed influencing, browbeating, and even bullying to a certain extent. For always there is the possibility that `articulate jurors may intimidate the inarticulate, the aggressive may unduly influence the docile.' People v. De Lucia
(1967), 20 N.Y.2d 275, 278, 282 N.Y.S.2d 526, 529, 229 N.E.2d 211, 213;People v. Redd (1990), 164 A.D.2d 34, 37, 561 N.Y.S.2d 439, 440 (both cases providing policy reasons for rule prohibiting jurors to impeach their own verdicts)." Id. at 120.
 {¶ 33} Here, Brown has presented much the same claim as the defendant in Hessler. Because Brown has failed to point to anything, besides the usual intense negotiations of any jury involved in a capital case, which did in fact cause a juror to change their vote, we conclude this portion of his second assignment of error must fail because it simply is not a basis of recovery.
 B. Ineffective Trial Counsel Claim {¶ 34} Next, Brown claims he received ineffective assistance of trial counsel, based upon trial counsel obtaining a discoverable statement from Brown's mother, Betty Brown, concerning his alleged gang membership as a juvenile. Brown claims he was prejudiced by his attorney's actions since the prosecutor used this information as a major theme of the trial. Because this statement was used at trial and was an issue on direct appeal, the trial court dismissed this claim as being res judicata. The trial court further explained "since discovery is part of every case, it would seem absurd to penalize an attorney for preparing for trial. Besides, if petitioner's counsel decided not to use the statements once finding them to be prejudicial, the attorney could have faced contempt."
 {¶ 35} Brown maintains, however, that the argument could not have been made on direct appeal because he was represented by the same counsel both at trial and on direct appeal. Brown is correct. The Ohio Supreme Court has determined, that since "counsel cannot realistically be expected to argue his own incompetence, res judicata does not act to bar a defendant represented by the same counsel at trial and upon direct appeal from raising a claim of ineffective assistance of counsel in a petition for post-conviction relief." State v. Lentz (1994),70 Ohio St.3d 527, 639 N.E.2d 784 citing State v. Carter (1973),36 Ohio Misc. 170, 65 O.O.2d 276, 304 N.E.2d 415. Thus, we continue our analysis of Brown's claim of ineffective assistance of counsel.
 {¶ 36} The United States Supreme Court, in Strickland v.Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674, set forth a two-part process to determine whether a conviction must be reversed upon a claim of ineffective assistance of counsel:
 {¶ 37} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
 {¶ 38} A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound trial strategy. Strickland, 80 L.Ed.2d at 694-95; State v. Thompson (1987),33 Ohio St.3d 1, 10; State v. Hamblin (1988), 37 Ohio St.3d 153, 155-56. Debatable trial tactics employed by counsel do not constitute lack of effective counsel. State v. Clayton, 62 Ohio St.2d 45, 49, certiorari denied (1980) 449 U.S. 879, 66 L.Ed.2d 102. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."Strickland, 80 L.Ed.2d at 695.
 {¶ 39} Here, Brown claims that counsel was ineffective because he should have known that any statement made by Brown's mother would be discoverable pursuant to Local R. 9 which requires both prosecution and defense to exchange all witness statements prior to trial. Accordingly, counsel had a duty to take reasonable care not to elicit statements from his mother that would be damaging or prejudicial to Brown's case. Brown claims this could have been accomplished by "pre-interviewing" her before taking a recorded statement.
 {¶ 40} However, after a comprehensive review of Betty Brown's interview, it appears trial counsel was merely trying to obtain information regarding the difficulty of Brown's childhood as part of the mitigation strategy. More specifically, the interview with Betty Brown goes into great detail about Brown's troubled childhood and her problems with drug abuse. She discusses how she moved her children from place to place and how she beat them. She also discussed the violence that the children had witnessed and how she stole from them and did drugs in front of them. She also explained how she had been sent to prison and had to leave her children. Her comment regarding Brown being a member of a gang as a small child came up in the context of her not raising Brown properly. We conclude it was most likely trial counsel's mitigation strategy to paint Brown as a person who really never had a chance.
 {¶ 41} Accordingly, trial counsel was not ineffective for eliciting that response since all of this negative information was to be strategically used during the mitigation stage of the proceedings. SeeClayton. Brown's second assignment of error is also meritless.
 {¶ 42} Accordingly, as both of Brown's assigned errors are meritless, the judgment of the trial court is affirmed.
Judgment affirmed.
Waite, P.J., and Vukovich, J., concur.