■ ARGYRIS MOISAKIS et al., Appellants, v ALLIED BUILDING PRODUCTS CORP., Defendant and Third-Party Plaintiff-Respondent. P & C GIAMPILIS CONSTRUCTION CORP., Third-Party Defendant-Respondent. [697 NYS2d 100] —In an action to recover damages for personal injuries, the plaintiffs appeal from a judgment of the Supreme Court, Kings County (Vaughan, J.), dated June 5, 1998, which, upon a jury verdict, and upon the denial of their motion to set aside the verdict and for a new trial, is in favor of the defendants and against them, dismissing the complaint.

Ordered that the judgment is affirmed, with one bill of costs.

The trial court properly denied the plaintiffs' motion to set aside the verdict and for a new trial on the ground of juror confusion as no juror confusion is apparent from the trial record. During the course of deliberations the jurors asked for a new verdict sheet, claiming that they had made an error on the original. The attorneys for the parties were notified, and a new verdict sheet was provided, without further inquiry and without objection. After the jurors were discharged and the plaintiffs' attorney spoke to them, the jurors claimed they had been confused by the term "substantial factor" on the verdict sheet. The attorneys for the parties then returned to the courtroom, and the plaintiffs' attorney placed the question of juror confusion before the trial court.

After hearing the argument, the trial court directed a totally unauthorized procedure. The court required all of the jurors to return the following week, at which time it questioned each of them. The foreperson of the jury stated that the word "substantial" "threw most of us off". Another juror stated that he did not realize he had been confused until he was going home. A third juror stated that he "didn't understand the whole thing". The trial court thereafter realized that its procedure was unauthorized, and denied the motion to set aside the verdict, stating that "there is no confusion in the record".

The law is well settled that jurors may not impeach their own verdict unless they have been subjected to outside influ-

ence (*see, Bedell v Hornick,* 245 AD2d 538; *Snediker v County of Orange,* 89 AD2d 560, *affd* 58 NY2d 647). There are two exceptions to that rule (*see, Bedell v Hornick, supra*).

First, juror testimony may be used in certain rare instances to correct a ministerial error in reporting the verdict (*see, Grant v Endy,* 167 AD2d 807; *Russo v Jess R. Rifkin, D.D.S., P. C.,* 113 AD2d 570), such as when the foreperson, through an honest mistake, enters the percentages of fault on the wrong lines (*see, Rose v Thau,* 45 AD2d 182). However, "this exception to the general rule is not intended to encompass jury error in reaching a verdict" (*Wylder v Viccari,* 138 AD2d 482, 484, citing *Pache v Boehm,* 60 AD2d 867).

Second, where there are " 'inherent defects, confusion or ambiguity in the verdict' " the trial court may order a new trial (*McStocker v Kolment,* 160 AD2d 980, 981, quoting *Wingate v Long Is. R. R.,* 92 AD2d 797, 798). The confusion must be apparent from the trial record (*see, Wylder v Viccari, supra,* at 484; *Cortes v Edoo,* 228 AD2d 463, 466).

In *Pache v Boehm (supra),* relied upon by the dissent, the verdict rendered by the jury was inherently inconsistent. The court, after recalling the jurors and questioning them, entered a different verdict. This Court reversed the determination of the trial court and granted a new trial "[b]ecause of the confusion which obviously pervaded all of the jury's findings" (*Pache v Boehm, supra,* at 868). In that case, however, the juror confusion in reaching the verdict was apparent from the trial record as the verdict was inherently inconsistent. In the instant case, on the other hand, no juror confusion is apparent from the trial record. The trial court here questioned the jurors as to confusion they purportedly had in reaching the verdict, after the verdict was accepted and the jury had been discharged. Therefore, the inquiry was not part of the trial record (*see, People v De Lucia,* 20 NY2d 275, 279; *Russo v Jess R. Rifkin, D.D.S., P. C.,* 113 AD2d 570, 574, *supra*). Indeed, as previously noted, that procedure was totally unauthorized.

The problems with permitting such a procedure are apparent here. After the jurors were discharged, they received extrajudicial communications from counsel for the parties, and therefore were exposed to outside influences of the most prejudicial sort. They then had the entire weekend to rehash the deliberations and formulate second thoughts.

The dissent acknowledges that no objection was made either to the language of the verdict sheet or the pertinent jury instructions. However, the dissent would hold that the post-trial inquiry of jurors as to confusion in reaching the verdict is

not only permissible, but can be used to demonstrate that language in the verdict sheet or in the trial court's instructions were so prejudicial that a new trial is warranted, despite the absence of a timely objection. Adopting such a position would result not only in the posttrial harassing of jurors but also the instability of verdicts (*Russo v Jess R. Rivkin, D.D.S., P. C., supra*, at 575).

The appellants' remaining contentions are either unpreserved for appellate review, or without merit. Bracken, J. P., Santucci and Goldstein, JJ., concur.

McGinity, J., dissents and votes to reverse the judgment and order a new trial in the following memorandum: I respectfully dissent and vote to reverse the judgment and order a new trial.

At the conclusion of the presentation of evidence in this trial, wherein it was alleged that the plaintiff Argyris Moisakis was injured through the negligence of the defendant Allied Building Products Corp. (hereinafter Allied) and its crane operator employee, the court submitted a verdict sheet to the jurors as they retired to deliberate. The questions were derived from PJI 2:70 of the and required answers to the following questions:

"1. Was the defendant Allied Building Products negligent? * * *

"2. Was the negligence of the defendant, Allied Building Products, a substantial factor in bringing about the accident? * * *

"NOTE: If your answer is YES, proceed to Question #3. If your answer is NO, report your verdict to the court".

During the course of jury deliberations, the court was made aware, by note, that the jury needed a new verdict sheet when they stated, "We made an error on the verdict sheet". The court directed the clerk to issue another copy of the same verdict sheet to the jury without inquiring as to the error and advised the clerk to so notify the attorneys.

The jury later returned a verdict unanimously finding that Allied was negligent (Question No. 1) but, also unanimously, that Allied's negligence was not a "substantial factor" in causing the accident (Question No. 2).

A motion to set aside the verdict as contrary to the weight of the evidence was denied. The court directed the attorneys to speak to the jurors who were still in the Central Jury Room. Upon inquiry, it was determined that the jurors had apportioned responsibility for the accident on the first verdict sheet in the percentages: Allied, 50% at fault in the happening of the accident, the plaintiff Argyris Moisakis, 20% at fault,

and the third-party defendant P & C Giampilis Construction Corp., 30% at fault. All of the jurors admitted that the second verdict sheet submitted to the court was in error. Scraps of the first verdict sheet were recovered by the court and described by the court in the record.

The court then stated for the record:

"THE COURT: If I am on solid ground and I can, after I question them, if I am able to tell them to go back in and if I am satisfied that there was confusion, and apparently, there was confusion on their part, all six of them, all six of them were confused—I have the representation of the attorneys and I have this piece of paper over here—I am going to ask them what this means.

"If it is what I think it might be, then again if I can do it, I am going to let them go back in and resume their deliberations because they are confused. And if they cannot do that or I don't do that because I am not on solid legal grounds doing that, then what I am going to do, it seems to me, I have no choice but to set the verdict aside, okay, and that's it".

The court then questioned the jurors, starting with the foreman, Juror Number 1:

"THE COURT: So let's begin, Mr. Jennings. When you were questioned, your answer, the jurors' answer as to question number one was yes?

"JUROR NUMBER 1: Yes.

"THE COURT: Your answer to question number two was no, correct?

"JUROR NUMBER 1: Yeah.

"THE COURT: Was that your entire verdict? * * *

"JUROR NUMBER 1: That was the one we made a mistake on. Instead of no, it was supposed to be yes. Everybody agreed. We just put no. That was the mistake we made on the second one only.

"THE COURT: Hold on a second. What was the mistake on the first verdict sheet? * * *

"JUROR NUMBER 4: On the first verdict sheet. On the second one we voted no. Then we continued to write answers not realizing it said, if you vote no, go back to the Court. That was the mistake and we reported it.

"Now we took the second ballot, so to speak, and we voted yes again on the first question but on the second question we voted no * * *

"THE COURT: Were you confused about anything?

"JUROR NUMBER 4: To my mind, if we voted yes to the first question, then the second question should have been voted yes as well * * *

"THE COURT: Mr. Munion, do you have any light to shed on this? Were you confused about anything?

"JUROR NUMBER 2: Well, I didn't understood [sic] the whole thing. I didn't understood [sic] after we talk [sic] it over and come to an agreement.

"THE COURT: All right. How about, Mr. Gosein, were you confused about any of this?

"JUROR NUMBER 3: Well, the first verdict we started where we sat down, we start deliberating, and we said that one party was 50 percent liable, the other party was 20, and the other party was 30.

"THE COURT: Go ahead. I understand.

"JUROR NUMBER 3: So we got this person was signing and she said we made a mistake. So I said what kind of mistake we made? She said if the second answer is no, we have to report to the Court.

"THE COURT: Right. So?

"JUROR NUMBER 3: So when the question was put to everybody, without thinking we all said no. But then I started realizing, I said, wait, if one party was substantially liable, that was the mistake. We all agreed to that mistake.

"JUROR NUMBER 4: The word was 'substantial.'

"JUROR NUMBER 3: 'Substantial' threw us off a bit. We thought the question was substantially, meaning 100 percent, but it wasn't that way. So that was that mistake we all agreed to that * * *

"THE COURT: You feel that way, all of you? What you are telling me, it was your intention—this is what I am confused about—your intention was to put the defendants were negligent, okay, and then you wanted to apportion the responsibility?

"JUROR NUMBER 4: Yes

"JUROR NUMBER 3: Yes * * *

"JUROR NUMBER 1: The word 'substantial' threw us off.

"JUROR NUMBER 4: The word 'substantial' threw us off.

"THE COURT: Go ahead. What do you want to say, Mr. Foreman? That is the foreman, Mr. Jennings.

"JUROR NUMBER 1: The word 'substantial' threw most of us off. We didn't understand the word substantial * * *

"THE COURT: So all six of you are telling me that in your mind the answer to the second question should have been yes? * * *

"THE COURT: So let me ask you this, why was your answer no in the second one?

"JUROR NUMBER 4: We misinterpreted the second one. The word 'substantial' threw us off. We were fighting about the meaning of 'substantial.' We should have sent for a dictionary".

The court went on to conclude: "And it's an unfortunate— this is a very unfortunate situation, and I sympathize with the plaintiffs in this case because, obviously, it seems to me that the jurors misunderstood the question of substantial cause, proximate cause; there's no doubt about it". Ultimately, however, the court denied the motion to set aside the verdict.

Thus, we are confronted with a clear illustration that the jurors were confused by the meaning of the language contained in the second question of the verdict sheet. The court, in its charge, never explained to the jury the term "substantial factor" although one of the jurors thought they should ask for a dictionary, apparently to get an explanation of the phrase. The case of *Green v Downs* (27 NY2d 205) is instructive. There, the Court of Appeals reviewed the applicable principles concerning a trial court's instructions, stating that it was deemed essential that a charge: " 'incorporate the factual contentions of the parties in respect of the legal principles charged.' * * * The trial court's instructions 'should state the law as applicable to the particular facts in issue in the case at bar, which the evidence in the case tends to prove; mere abstract propositions of law applicable to any case, or mere statements of law in general terms, even though correct, should not be given unless they are made applicable to the issues in the case at bar' " (*Green v Downs, supra,* at 208).

Statements of law should be made applicable to the issues in the case so as to result in an intelligent verdict.

Here, notwithstanding that there was no exception taken to the court's charge, to permit the verdict to stand in light of the clear recitation by all six jurors that it was not their verdict, that they were confused and that they agreed unanimously upon the percentage of fault of all parties, would be an obvious miscarriage of justice and would violate the jurors' oath.

"It is well established that jurors may not impeach their own verdict * * * This principle, however, is subject to two well-known exceptions. First, where an error is made in reporting the verdict, the Trial Judge may, upon the unanimous affidavits or statements of the jurors, correct the judgment to conform to

the actual verdict * * * Second, where the record demonstrates substantial confusion among the jurors in reaching a verdict, the court must direct a new trial to prevent a miscarriage of justice to the litigants" (*Bedell v Hornick,* 245 AD2d 538; *see, Cortes v Edoo,* 228 AD2d 463, 466). Although it did not become evident that the jurors were confused until after they were discharged, nevertheless, precedent from our court demonstrates that the instant verdict may be set aside under such circumstances.

In *Pache v Boehm* (60 AD2d 867), also a negligence case, the jury indicated, post-discharge, to one of the attorneys that it had intended to apportion fault between drivers. The next day the court recalled the members of the jury and questioned them as to whether they intended to apportion fault between the drivers. Upon finding that they did, the trial court directed entry of a verdict consistent with their findings of apportionment of fault. In ordering a new trial, this Court stated: "Where errors are made in reporting a verdict, the Trial Judge may, in his discretion and upon the unanimous affidavits or statements of the jurors, correct the judgment in accordance with the actual verdicts. However, this exception to the rule prohibiting impeachment of jury verdicts was not intended to encompass jury error in *reaching* a proper verdict. Where the record demonstrates substantial confusion in reaching a verdict the court may only direct a new trial to prevent a miscarriage of justice to individual litigants" (*Pache v Boehm, supra,* at 868).

In *Pache,* the verdict involved a non-negligent plaintiff passenger and two negligent drivers. Here, the verdict found a defendant to be negligent in the process of hoisting insulation on a roof, yet, inexplicably further found that such negligence was not a "substantial factor" in causing the accident. The result is explained, however, in that *all* the jurors were confused by the meaning of the term "substantial factor" and, indeed, indicated their confusion to the court, albeit after their discharge. Under such circumstances, to prevent a true miscarriage of justice, the verdict should be set aside inasmuch as it does not truly reflect the determination reached by the jury. A new trial is warranted—our jury system demands nothing less.