[797 NYS2d 478]

Nick Pavlou et al., Respondents-Appellants, v City of New York, Appellant-Respondent and Third-Party Plaintiff, et al., Defendant and Third-Party Plaintiff. Felix Industries, Inc., Third-Party Defendant-Appellant. (And Another Action.)

First Department, June 23, 2005

APPEARANCES OF COUNSEL

*Quirk & Bakalor, P.C.*, New York City (*Timothy J. Keane* of counsel), for City of New York, appellant-respondent.

*Lester Schwab Katz & Dwyer, LLP*, New York City (*John Sandercock* and *Carl Schaerf* of counsel), for Felix Industries, Inc., appellant.

*Levine & Grossman*, Mineola (*Michael B. Grossman* of counsel), for respondents-appellants.

**OPINION OF THE COURT**

BUCKLEY, J.

This case presents, inter alia, an attempted jury nullification in the civil context.

The factual findings of the jury, as reflected on the verdict sheet, were: (1) the Industrial Code was violated, the violation constituted negligence, but the negligent violation was not a substantial factor in causing plaintiff's injury; (2) the crane was not defectively designed or manufactured; and (3) plaintiff's employer, third-party defendant Felix Industries, Inc. (Felix) was negligent, which negligence was a substantial factor in causing plaintiff's injury. Thus, the jury found that the cause of plaintiff's injury was Felix's negligence in operating a crane that already had a crack, and not the lifting of a load in excess of the Industrial Code's weight allowance or a flaw in the design or manufacture of the crane. Such findings are fully consistent with each other and with the evidence presented at trial. The unrefuted expert testimony established that, due to the preexisting cracks, it was not safe to operate the crane at all and that the crane would have failed upon lifting any load, including one well within the weight limitations of the Industrial Code.

After the jury was discharged, plaintiff's counsel informed the jurors that their special verdict would result in no monetary

damages for plaintiff. At that point, the jurors stated that, had they known the effect of their response to question 3 (whether the negligent violation of the Industrial Code was a proximate cause of plaintiff's injury), they would have answered it in the affirmative, in order to enable plaintiff to obtain a monetary award. It was only in the identically worded, attorney-drafted affidavits that the jurors studiously claimed their determination of proximate cause concerning the Industrial Code was "misrecorded."

As in *Mayer v Goldberg* (241 AD2d 309, 312 [1997]), "[w]hile the jury may have wanted to award damages on a theory of its own, it clearly understood the fundamental question before it." None of the jury notes indicated any confusion over the standard for determining the issues of the Industrial Code, negligence or proximate cause. The jurors understood and resolved those issues, their questions being limited to ascertaining the consequences to the City; therefore, the verdict should not be disturbed, notwithstanding the fact that "the jury ventured beyond the issue[s] before it, awarding damages under its own theory" (*id.*; *see also Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 40-41 [1980]). Thus, the jury should not have apportioned liability between Felix and plaintiff, or fixed an amount of damages, once it determined that the violation of the Industrial Code was not a proximate cause and that the crane manufacturer was not negligent. The fact that the jury attempted such an award is a superfluous act that does not require a new trial.

Moreover, the verdict with respect to the claim under Labor Law § 241 (6) was not against the weight of the evidence. Plaintiff asserts that there is no fair interpretation of the evidence that would allow a jury to find that the load attached to the crane violated Industrial Code (12 NYCRR) § 23-8.2 (g) (2) (iii) but was not a proximate cause of his injuries. Thus, he maintains that the jury's finding with respect to the load attached to the crane was against the weight of the evidence.

A jury's verdict should not be lightly overturned. Plaintiff has not met the heavy burden of demonstrating that the preponderance of the evidence is so great that the jury could not have reached its verdict upon any fair interpretation of the evidence (*see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). The experts consistently testified that the lifting or dragging of any weight, even within the limitations of the Industrial Code, would have caused the cracked crane to fail, and plaintiff offered no

evidence to the contrary. Under such circumstances, the jury could find that the operation of a damaged crane, rather than the lifting of an excessive weight, was the sole proximate cause. Under the dissent's construction, a violation of the Industrial Code's weight allowance is, of itself, always a contributing cause, where the crane collapses. However, "[t]he issue of whether a defendant's negligence was a proximate cause of an accident is separate and distinct from the negligence determination. A defendant may act negligently without that negligence constituting a proximate cause of the accident" (*Ohdan v City of New York*, 268 AD2d 86, 89 [2000], *lv denied* 95 NY2d 769 [2000]). Even the dissent concedes that the jury's finding was "theoretically" possible. Accordingly, I would not intrude upon the jury's fact-finding role with respect to the issue of proximate cause.

Although the jury's factual findings were consistent and supported by the evidence, and therefore did not necessitate an inquiry into the verdict, where, as here, the trial court itself believes there might be some defect requiring clarification of the jury verdict, it is the better practice to question the jury immediately or, if not possible, direct the jurors to return the following morning, giving appropriate instructions before discharging them.

Accordingly, the order of the Supreme Court, New York County (Jane Solomon, J.), entered February 6, 2004, insofar as it granted plaintiffs' motion pursuant to CPLR 4404 (a) for a new trial on the City's statutory liability under Labor Law § 241 (6) claim, should be reversed, on the law, without costs, plaintiffs' motion denied, that part of the jury verdict reinstated, and the matter remanded for further proceedings.

SAXE, J. (dissenting). The responsibility of a trial judge to the fair administration of justice is never more focused and important that in those situations where a jury's verdict demonstrates, on its face, that a fundamental error has infected the verdict. In those circumstances, it is the responsibility of the judge to take charge of the situation, consult with counsel, mark the returned jury verdict sheet as a court exhibit, reinstruct the jury if necessary, supply to the jury a corrected verdict sheet if that is an appropriate corrective measure, and require the jury to continue the deliberative process. Here, although the trial court initially took no such action, it thereafter appropriately recognized the incongruity of the verdict reached by the jury and properly exercised its discretion to order a new trial pursuant to CPLR 4404 (a).

To refer to the grant of a new trial as "jury nullification" is to both misuse that term[1] and mischaracterize the purpose of such an order, which is to ensure that the verdict reflects the true intent of the jury, not to nullify it.

## Facts

On October 30, 1996, plaintiff Nick Pavlou was catastrophically injured while working at a construction site on a Manhattan street. Pavlou and his coworker Paul Foti, employees of third-party defendant Felix Industries, were instructed to move a large steel road plate with a boom crane that was affixed to the back of a flatbed truck. Pavlou attached a cable to the plate while Foti operated the crane. The crane was in the process of hoisting the steel plate when the boom of the crane broke off and crashed down on top of Foti and Pavlou. Foti was killed and Pavlou suffered debilitating injuries that required multiple surgeries and left him partially paralyzed.

Pavlou and his wife brought direct claims against the City of New York, the site's owner, and the manufacturer of the crane, both of whom then interposed third-party claims against Felix Industries. Plaintiffs' claim against the crane manufacturer was for products liability; the manufacturer's third-party claim against Felix was for contribution based on the theory that Felix's negligent use and maintenance of the crane had caused or contributed to a crack that ultimately led to the incident. As against the City, plaintiffs' initial claims under Labor Law §§ 200 and 240 (1) had been dismissed by the close of trial, leaving only a claim under Labor Law § 241 (6), based on an alleged violation of Industrial Code (12 NYCRR) § 23-8.2 (g) (2) (iii), which limits the weight load a crane may lift. The City's third-party claim against Felix was for indemnification and contribution.

During trial, the court determined that the City was entitled to indemnification against Felix, and decided to frame the verdict sheet to reflect that ruling.

## The Verdict Sheet

Although the City was one of two named direct defendants, the verdict sheet did *not* name the City either in its questions regarding liability or—of critical importance here—in its ques-

---

**1.** *See People v Douglas*, 178 Misc 2d 918, 920 (1998), citing Weinstein, *Considering Jury "Nullification": When May and Should a Jury Reject the Law to do Justice*, 30 Am Crim L Rev 239 (1993).

tion directing the jury to apportion liability. On the liability questions the jury was orally instructed that questions 1 through 3 on the verdict sheet related to the City's liability. But the absence of the City for purposes of apportioning liability was not explained.

The questions on the verdict sheet were:

"1. Was Industrial Code § 23-8.2 (g) (2) (iii) violated at the time of the accident?

"2. Was that violation negligence?

"3. Was the negligent violation of Industrial Code § 23-8.2 (g) (2) (iii) a substantial factor in causing Mr. Pavlou's injury?

"4. Was defendant Simon Ro Corporation's (a/k/a Terex Corporation) Model TC-3067 crane defective?

"5. Was that defect a substantial factor in causing Mr. Pavlou's injury?

"6. Did Simon Ro negligently design the subject crane?

"7. Was that negligence a substantial factor in causing Mr. Pavlou's injury?

"8. Was third party defendant Felix Industries negligent?

"9. Was that negligence a substantial factor in causing Mr. Pavlou's injury?

"10. Was Mr. Pavlou negligent?

"11. Was Mr. Pavlou's negligence a substantial factor in causing his injury?

"12. What percentage of negligence is attributable to each party?

"Simon Ro _____%

" (If 'yes' to questions 5 or 7)

"Felix Industries _____%

"(If 'yes' to questions 3 or 9)

"Mr. Pavlou ____%

"(If 'yes' to question 11)

"(Total must equal 100%)"

Questions 13 through 18 concerned the jury's determination of damages.

The failure to include defendant City in the verdict sheet apparently prompted the jury to send the court a note asking, "(1) Why did the City of New York make a closing argument if it is not possible to find the City liable? (2) Will the answers to questions 1-3 on the verdict sheet affect the City in any way?"

The court answered these questions by rereading the portion of its jury charge explaining that the claim against the City was under Labor Law § 241 (6), and based on Felix's alleged violation of the Industrial Code requirement that "[n]o load shall be lifted by any mobile crane that exceeds the relevant maximum specified by its capacity chart." (12 NYCRR 23-8.2 [g] [2] [iii].) The charge explained that an owner of an area in which construction takes place, such as the City in this case, is liable for injury caused by the failure of a contractor, in this case Felix, to use reasonable care in complying with this provision of the Industrial Code. The court then went on to once again review the verdict sheet with the jury, explaining that the apportionment of liability as against Felix included the portion of fault attributable to the City in questions 1 through 3, along with any other negligence found on Felix's part.

Soon thereafter on the same day, the jury sent in another note, asking "Explain please again what questions 1-3 pertain to and how is the City affected by the answers to these questions since there is no place to indicate liability of the City on the verdict sheet? Is the City indemnified by Felix?"

The court's response was as follows:

> "Ladies and gentlemen, one of the things I said to you in either or both, in the opening remarks which are prepared and the closing charge which was largely prepared was, you are to deliberate . . . fully and fairly, answer the questions put to you, no matter whom the verdict helps or hurts and *you have forgotten that*. Now, either you say 'yes' or 'no' to the first question and 'yes' or 'no' to the second question and all the way down the line. And then, if

you believe it's appropriate to do some apportioning in conformity with the instructions I have spent a lot of time giving you a while ago, or you have not gotten to the apportionment issues because you have found nobody liable in accordance with the liability questions. And regardless of this last note what I have just said to you is the answer. You are not to be affected by fear or favor, what the response of the parties or the public will be, but answer the questions in accordance with the oath you took to decide the factual issues in accordance with the law as given to you by the court. If you had been doing that you would be finished by 4 o'clock today." (Emphasis added.)

Shortly before the verdict was actually delivered, the jury sent a final note, asking: "We can't agree on [question] # 3, 3 are one way, 2 are the other, and one would go either way. Any suggestions? Can we omit the question? This is the only question remaining outstanding." Ignoring the logical dilemma in the jury's having apportioned liability without having determined whether the City was liable, the court responded that question 3 could not be omitted, and the jury returned a few minutes later with its verdict.

### The Verdict

The jury found that the Industrial Code provision had been violated, which constituted negligence, but that this negligence was not a proximate cause of the accident (that is, it answered "Yes" on questions 1 and 2, and "No" on question 3). It found the manufacturer of the crane not liable (answering "No" on questions 4 and 6, and striking out questions 5 and 7). Then, contrary to the instruction after question 7, which directed the jury to stop there and report back to the court if it answered "no" to questions 3, 5 and 7, the jury went on to answer the rest of the questions.

In response to the remaining questions, the jury found that Felix was negligent and that its negligence was a proximate cause of Pavlou's injury, and apportioned liability 99% to Felix and 1% to Pavlou. Plaintiffs' damages were found to total an aggregate of approximately $12,850,000.

The finding in favor of the crane manufacturer is not challenged on appeal.

## Discussion

In arguing that the verdict should not have been set aside, the City points out that the concepts of inconsistent verdicts and juror misconduct are both inapplicable, and that the jury's answers on the verdict sheet can theoretically be supported by the evidence. It is indeed true that the jury's failure to follow the exact sequential instructions of the verdict sheet does not in itself amount to juror misconduct, nor can the verdict be deemed inconsistent. Furthermore, we recognize that the jury could have found credible the testimony of defendants' crane experts, indicating that the crane would have collapsed even if the plate's weight had been within the set limits. However, the legal concept of proximate cause requires that findings as to causation be based not upon speculation as to what would have happened in some other set of circumstances, but only upon the actual cause or causes of the injury.

Multiple circumstances may simultaneously serve as proximate causes of an injury, as long as each was a substantial factor in bringing about the injury, even if its contribution to causing the injury was relatively small, as long as it is not slight or trivial (see PJI 2:70, 2:71 [2005]). Here, while the crack in the crane was certainly a substantial factor in bringing about the injury, the weight of the plate being lifted must necessarily have contributed to the accident as well. The fact that the crane collapsed at the very time it was lifting an excessive load makes it illogical to conclude that the overload was not, at least, a direct and substantial cause of the collapse. The overload, at the very least, hastened the collapse of the crane. To reject the excessiveness of the weight of the plate as having had any causative effect requires impermissible surmise and speculation as to what might have happened had the plate been within the code's weight limits. But, plaintiff need not exclude what might have happened, but need only prove what did happen. The fact is, the plate's actual weight, which exceeded the regulation's requirements, *had to have* contributed to the occurrence.

The defense's argument that the accident would have occurred even without this negligence amounts to the use of a "but for" analysis, under which a defendant's conduct will be held to be a cause of the event if the event would not have occurred but for that conduct, but will not be held to be a cause of the event if the event would have occurred without it (see Prosser and Keeton, Torts § 41, at 266 [5th ed]). However, this type of "but for" approach to tort liability has been rejected as

the test of proximate cause (*see Dunham v Village of Canisteo*, 303 NY 498, 505-506 [1952]; 1A NY PJI3d 2:70, Comment, at 359 [2005]). The claim that the accident would have occurred even without the negligence in question is not the issue; the issue is whether that particular negligence was, in the event, one of the contributing causes to the accident.

Even if we agreed that based upon the evidence, the jury could find that the only proximate cause was the crack in the crane, a question would still remain as to whether the jury's answers may properly be accepted. Because it is apparent that the finding of no proximate cause against the City in the answer to question 3 on the verdict sheet was the result of a fundamental misunderstanding on the part of the jury, the order for a new trial was necessary and proper.

The critical error in the verdict sheet, an error which created a central misunderstanding on the part of the jury as to the task before it, was the omission from the verdict sheet of any reference to defendant City from its liability questions and especially from its apportionment question.[2] True, the trial court explained in its charge to the jury that the City's liability, if any, would be based upon the jury's answer to questions 1 through 3 on the verdict sheet, all relating to the claimed violation of Industrial Code § 23-8.2 (g) (2) (iii). However, the absence of any place on the verdict sheet to apportion a percentage of liability against the City, and the instruction to include any liability attributable to the City from question 3 as part of Felix's liability in the apportionment section, left the jury with the impression that it need not bother holding the City liable pursuant to questions 1 through 3. Indeed, the instruction that any liability found under questions 1 through 3 should simply be added in with the apportionment of liability against Felix alone, essentially established that any finding of liability against the City under questions 1 through 3 would be meaningless, since it would wind up simply being added to Felix's liability. It was logical for the jury to conclude—as it clearly did—that the answer to question 3 on the verdict sheet was inconsequential or unnecessary, so there was no point in their going to the

---

2. While a grant of a conditional judgment of indemnification in favor of a direct defendant against a third-party defendant prior to a determination of liability on the part of the direct defendant is proper (*see Negroni v East 67th St. Owners*, 249 AD2d 79, 81 [1998]), such a determination does not necessarily justify the deletion of that direct defendant from the verdict sheet, *particularly* not from its apportionment question.

trouble of trying to legitimately agree upon a verdict as to question 3, since it was apparent that the answer would make no difference.

The jury's final question, asked after it had completed the verdict sheet in all other respects, as to whether it could omit question 3, clearly conveys its belief that question 3 was of no moment and could be safely omitted. That the jury was thinking along these lines is also illustrated by its hypothetical question: "If we answer yes to 1-3, and we find Felix 100% liable for $10, how much does the City owe, if anything?" It was clearly trying to ascertain whether there would be any consequences to the City if it answered question 3 "Yes," and it clearly concluded that either answer would have no effect on the City, rendering that question pointless and further deliberation on the point unnecessary.

Since it is so apparent that the jury's answering "No" to question 3 was due to its conclusion that this particular answer would have no impact, the verdict reached in reliance on this answer should not be allowed to stand. This situation necessitates the new trial ordered by the trial court in the context of plaintiff's CPLR 4404 (a) motion.

The majority rejects the idea that the jury's questions reflect an essential misunderstanding. It relies on the jury's "No" answer to question 3 to conclude that the jury definitively found that the City's negligence was not a proximate cause of the accident. However, its assertion that "[n]one of the jury notes indicated any confusion over the standard for determining the issues of the Industrial Code, negligence or proximate cause" ignores the extent to which the jury sought guidance as to how the City could be held liable. By repeatedly seeking an explanation of why, regardless of its findings, it could not ultimately apportion liability to the City, the jury indicated a broader and more basic confusion, not over the application of the Industrial Code, but over the City's position as a potentially culpable party. Moreover, while the jury's determination of damages as against Felix is, as the majority notes, superfluous in the legal sense, that it attempted to make such an award only highlights its confusion.

In the face of the evidence that the jury saw it as unnecessary to concern itself with properly completing its deliberations regarding the City's liability under questions 1 through 3, it is wrong to rely upon the jury's questionable answer to question 3 to support dismissing the action. The better and more just approach is the new trial ordered by the trial court.

We emphasize that we do not, and need not, rely on the contents of the jurors' postverdict affidavits to impeach their verdict. Such subsequent protestations are normally not permitted to impeach a verdict unless they demonstrate that the jurors were subject to outside influence, or that the verdict contains a ministerial error or an inherent defect (*see Moisakis v Allied Bldg. Prods. Corp.*, 265 AD2d 457, 457-458 [1999], *lv denied* 95 NY2d 752 [2000]). Nevertheless, it is worth noting that those affidavits are to the same effect as our conclusions concerning the nature of the jurors' confusion.

That plaintiff offered no challenge to the form of the verdict sheet should not prevent our consideration of this fundamental problem—the court and counsel were all convinced of the legal efficacy of this format for the verdict sheet, and no one was able to foresee the possibility of the misunderstanding that resulted. Once the problem became apparent, plaintiff timely moved pursuant to CPLR 4404 (a) to set aside the verdict in the interest of justice. In these circumstances, where the face of the record reflects that the jury misunderstood the centrality of verdict sheet question 3 and believed it to be superfluous, plaintiff's motion was properly granted.

A trial court has the discretion under CPLR 4404 (a) to grant a new trial where there is evidence that substantial justice has not been done; to determine whether substantial justice has been done, the trial judge must consult her experience and sense of fairness (*see Micallef v Miehle Co., Div. of Miehle-Goss Dexter*, 39 NY2d 376, 381 [1976]). The exercise of discretion by the trial court here was not an abuse of that discretion (*see id.* at 381-382). There is a clear question here as to whether substantial justice has been done. As in *Vera v Bielomatik Corp.* (199 AD2d 132, 133 [1993]), here, too, based upon the record, "the lingering question clearly remains: whether the jury truly intended complete exoneration for the primary defendants."

Upon review, it is apparent that the jury's difficulties could have been resolved by further action on the part of the trial court when the completed verdict sheet made this confusion apparent. As soon as it saw that the jury had made a liability finding against Felix despite its finding of no liability against both direct defendants, and in light of the focus of the jury's repeated queries during deliberations, the trial court should have recognized the likelihood of a crucial misunderstanding, and specifically instructed the jury on how—and why—to answer the questions in the proper sequence, specifically clarifying that

only if it found liability against at least one of the two direct defendants could there could be a verdict against the third-party defendant. It could then have provided the jury with a new, blank verdict sheet. If there was insufficient time at the moment the jury brought in the flawed verdict, it was unnecessary for the court to accept the verdict and dismiss the jurors at that moment. It could have simply adjourned the matter to the following court day and instructed the jurors to return, admonishing them, as it would at any break in deliberations, not to speak to anyone about the case. By retaining and marking the incorrectly completed verdict sheet, the court would have preserved the initial verdict for appellate review, while ensuring that the verdict indeed reflected the jury's true findings.

Although trial judges generally limit their discussion with the jury to the language spelled out in formal jury charges, and hesitate to provide detailed legal information out of concern about creating confusion and interfering with the jury's fact-finding function, when the answers on a verdict sheet, in view of the questions that preceded those answers, indicate a fundamental misunderstanding, it is incumbent upon the trial court to attempt to resolve any misunderstanding by providing the jury with the information it lacks (*see Beharry v O'Grady*, NYLJ, Apr. 3, 1987, at 13, col 1, *affd* 137 AD2d 970 [1988]).

In conclusion, we should not leave undisturbed the apparent finding that the negligent violation of Industrial Code § 23-8.2 (g) (2) (iii) was not a proximate cause of the accident, when such finding was arrived at in the context of substantial jury confusion, as gleaned from a careful consideration of the trial record showing errors in the verdict sheet and a lack of necessary information in the charge. Accordingly, I would affirm.

Tom and Marlow, JJ., concur with Buckley, P.J.; Andrias and Saxe, JJ., dissent in a separate opinion by Saxe, J.

Order, Supreme Court, New York County, entered February 6, 2004, reversed, on the law, without costs, plaintiff's motion for a new trial on defendant City's liability denied, that part of the jury verdict reinstated, and the matter remanded for further proceedings.