# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**602**

**CA 12-02058**

PRESENT: SMITH, J.P., FAHEY, CARNI, VALENTINO, AND WHALEN, JJ.

---

KELLEY BUTTERFIELD AND DOUGLAS
BUTTERFIELD, PLAINTIFFS-RESPONDENTS,

V                                        MEMORANDUM AND ORDER

JAMES R. CAPUTO, M.D., JAMES R. CAPUTO, M.D.,
P.C., DEFENDANTS-APPELLANTS-RESPONDENTS,
AND CROUSE HOSPITAL, DEFENDANT-RESPONDENT-APPELLANT.

---

SMITH, SOVIK, KENDRICK & SUGNET, P.C., SYRACUSE (MICHAEL PAUL RINGWOOD
OF COUNSEL), FOR DEFENDANTS-APPELLANTS-RESPONDENTS.

GALE, GALE & HUNT, LLC, SYRACUSE, HANCOCK ESTABROOK, LLP (ALAN J.
PIERCE OF COUNSEL), FOR DEFENDANT-RESPONDENT-APPELLANT.

DEFRANCISCO & FALGIATANO LAW FIRM, SYRACUSE (CHARLES L. FALGIATANO OF
COUNSEL), FOR PLAINTIFFS-RESPONDENTS.

---

Appeals from an order of the Supreme Court, Onondaga County
(Anthony J. Paris, J.), entered May 24, 2012.  The order, inter alia,
granted those parts of the motions of plaintiffs and defendant Crouse
Hospital to set aside the verdict with respect to defendants James R.
Caputo, M.D., and James R. Caputo, M.D., P.C.

It is hereby ORDERED that the order so appealed from is modified
on the law by denying those parts of the posttrial motions of
plaintiffs and defendant Crouse Hospital to set aside the verdict as
to defendants James R. Caputo, M.D. and James R. Caputo, M.D., P.C.,
and as modified the order is affirmed without costs.

Memorandum:  Plaintiffs commenced this action seeking damages
for, inter alia, injuries sustained by Kelley Butterfield (plaintiff)
as the result of the alleged negligence of defendants James R. Caputo,
M.D., and James R. Caputo, M.D., P.C. (collectively, Dr. Caputo) in
performing laparoscopic surgery on plaintiff at defendant Crouse
Hospital (Crouse) and the alleged negligence of defendants in
providing her with postoperative care.  After a trial, a jury found
that defendants were negligent, and that the negligence of Crouse was
a substantial factor in causing plaintiff's injuries, but that the
negligence of Dr. Caputo was not.  The jury awarded damages to
plaintiff's husband for past loss of consortium and to plaintiff for
past and future pain and suffering, as well as future medical costs.

We agree with Dr. Caputo that Supreme Court erred in granting

those parts of the posttrial motions of plaintiffs and Crouse seeking to set aside the verdict with respect to him. We therefore modify the order accordingly. "A verdict finding that a defendant was negligent but that such negligence was not a proximate cause of the [plaintiff's injuries] is against the weight of the evidence only when [those] issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (*Santillo v Thompson*, 71 AD3d 1587, 1588-1589 [internal quotation marks omitted]). "Where a verdict can be reconciled with a reasonable view of the evidence, the successful party is entitled to the presumption that the jury adopted that view" (*Schreiber v University of Rochester Med. Ctr.*, 88 AD3d 1262, 1263 [internal quotation marks omitted]). Here, plaintiffs alleged four different theories of negligence against Dr. Caputo, and we conclude that there is a reasonable view of the evidence to support a finding that Dr. Caputo was negligent in failing to provide Crouse's resident staff with adequate information concerning the operative procedure and plaintiff's postoperative care, but that such failures were not the proximate cause of plaintiff's injuries (*see generally id.*).

Contrary to Crouse's contention, however, the court properly granted plaintiffs' "supplemental motion" to correct the verdict with respect to the award of damages for plaintiff's future pain and suffering. In support of the "supplemental motion," plaintiffs submitted affidavits from all six jurors, who averred that they understood and agreed that plaintiff would receive $60,000 per year for a period of 30 years, not a total of $60,000 over the course of that period (*see Smith v Field*, 302 AD2d 585, 586-587; *Rose v Thau*, 45 AD2d 182, 184-185). We acknowledge that "public policy concerns disfavor the use of juror affidavits for posttrial impeachment of a verdict" (*Wylder v Viccari*, 138 AD2d 482, 484). Here, however, "[t]he information afforded by the affidavits of the jurors is not to impeach, but to support the verdict really given by them" (*Wirt v Reid*, 138 App Div 760, 766; *see Dalrymple v Williams*, 63 NY 361, 364), and "where[, as here,] there has been an honest mistake which, if not corrected, would prevent the findings of the jury as it actually was from being carried out, the correction of the verdict by the court [is] not an impeachment of the verdict by the jurors" (*Rose*, 45 AD2d at 184; *see Smith*, 302 AD2d at 586-587). Contrary to Crouse's further contention, the court also properly concluded that the corrected award of damages for plaintiff's future pain and suffering does not deviate materially from what would be reasonable compensation (*see generally* CPLR 5501 [c]).

Finally, we conclude that the court properly denied Crouse's motion for a new trial based upon alleged juror misconduct inasmuch as the motion was supported only by hearsay (*see Putchlawski v Diaz*, 192 AD2d 444, 445, *lv denied* 82 NY2d 654).

All concur except FAHEY, J., who dissents in part and votes to modify in accordance with the following Memorandum: I respectfully dissent in part. I agree with the majority that Supreme Court erred in granting those parts of the posttrial motions of plaintiffs and defendant Crouse Hospital (Crouse) seeking to set aside the verdict

with respect to defendants James R. Caputo, M.D., and James R. Caputo, M.D., P.C. (collectively, Dr. Caputo).  I cannot agree with the majority, however, that the court properly granted plaintiffs' "supplemental motion" to correct the verdict with respect to the award of damages for the future pain and suffering of Kelley Butterfield (plaintiff).  Instead, I would grant Crouse's "supplemental motion" to the extent that it seeks a new trial on the issue of damages for plaintiff's future pain and suffering.

The trial of this medical malpractice action commenced on January 9, 2012 and, on January 20, 2012, the jury returned a verdict that, inter alia, awarded damages to plaintiff in the amount of $60,000 for future pain and suffering over a period of 30 years.  The court subsequently issued a scheduling order requiring posttrial motions to be filed by February 21, 2012, and plaintiffs and Crouse filed their motions by that deadline.

On March 3, 2012, while the posttrial motions were pending, plaintiffs' attorney attended a college basketball game at the Carrier Dome in Syracuse and, while there, was approached by the jury foreperson.  An affidavit submitted by plaintiffs' attorney establishes that he and the foreperson spoke briefly, and that the two decided to discuss the foreperson's experience on the jury in greater detail at a more appropriate time and location.

Plaintiffs' attorney averred that the two eventually spoke via telephone on March 8, 2012.  During that telephone conversation, plaintiffs' attorney and the foreperson discussed, inter alia, the jury's award for plaintiff's future pain and suffering.  The foreperson expressed surprise at plaintiffs' apparent disappointment with that award, and plaintiffs' attorney explained that plaintiff was disappointed that the jury had awarded her those future damages in the sum of only $60,000 to be paid over 30 years.  According to plaintiffs' attorney, the foreperson indicated that it was the intent of the jury to award plaintiff future damages for pain and suffering of $60,000 *per year* for 30 years, thus yielding a total of $1,800,000 for that component of the jury award.  Plaintiffs' attorney further averred that the foreperson explicitly told him that the jury understood that it was "to record the amount awarded per year and then the number of years it was to cover; [the jury] did not understand [that it was] to put the total amount of the award for the entire 30 year period."

Plaintiffs' attorney subsequently contacted the court and was granted leave to submit "supplemental motion" papers, which include an affidavit from each juror stating that the jury intended to award plaintiff $1.8 million in damages for future pain and suffering, i.e., an award of damages of $60,000 per year for a period of 30 years, rather than a total of $60,000 to be paid over a period of 30 years.  Crouse opposed the "supplemental motion" on the ground that juror affidavits may not be used to impeach the verdict but added by way of its own "supplemental motion" that, in light of the issues raised by plaintiffs' submissions, the interests of justice and fairness required the court to grant a new trial on all issues.  In my view,

the court erred in granting plaintiffs' "supplemental motion" and in denying Crouse's "supplemental motion" in its entirety.

As an initial matter, I reject Crouse's contention that plaintiffs waived their instant challenge to the verdict. "Waiver is an *intentional relinquishment* of a known right" (*Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 968 [emphasis added]) and, here, there is no evidence that plaintiffs' attorney intentionally relinquished his right to challenge the manner in which the court instructed the jury with respect to the award of damages for plaintiff's future pain and suffering, or the manner in which the jury calculated, recorded, or reported that award.

On the merits, I note that " '[a]bsent exceptional circumstances, juror affidavits may not be used to attack a jury verdict' " (*Herbst v Marshall*, 89 AD3d 1403, 1404; *see Phelinger v Krawczyk* [appeal No. 1], 37 AD3d 1153, 1153-1154). *Moisakis v Allied Bldg. Prods. Corp.* (265 AD2d 457, *lv denied* 95 NY2d 752) sets forth the following exceptions to the general rule that, unless they have been subjected to outside influence, jurors may not impeach their own verdict: "First, juror testimony may be used in certain rare instances to correct a ministerial error in reporting the verdict (*see*[] *Grant v Endy*, 167 AD2d 807; *Russo v Jess R. Rifkin, D.D.S., P. C.*, 113 AD2d 570), such as when the foreperson, through an honest mistake, enters the percentages of fault on the wrong lines (*see*[] *Rose v Thau*, 45 AD2d 182). However, 'this exception to the general rule is not intended to encompass jury error in reaching a verdict' (*Wylder v Viccari*, 138 AD2d 482, 484, citing *Pache v Boehm*, 60 AD2d 867). Second, where there are ' "inherent defects, confusion or ambiguity in the verdict[,]" ' the trial court may order a new trial (*McStocker v Kolment*, 160 AD2d 980, 981, quoting *Wingate v Long Is. R. R.*, 92 AD2d 797, 798). The confusion must be apparent from the trial record (*see*[] *Wylder v Viccari, supra*, at 484; *Cortes v Edoo*, 228 AD2d 463, 466)" (*Moisakis*, 265 AD2d at 458; *cf. Porter v Milhorat*, 26 AD3d 424, 424).

I cannot conclude that the first *Moisakis* exception applies here. Where "the thought process of the jurors must be examined in order to determine their true intent, the error . . . is not ministerial in nature" (*McStocker*, 160 AD2d at 981), and courts have frequently concluded that a jury's mistaken impression that its damages award is a net, rather than gross, calculation is not a ministerial error (*see Lustyik v Manaher*, 246 AD2d 887, 889-890; *Alkinburgh v Glessing*, 240 AD2d 904, 904-905; *Walden v Otis El. Co.*, 178 AD2d 878, 880, *lv denied* 79 NY2d 758; *Grant v Endy*, 167 AD2d 807, 807-808; *McStocker*, 160 AD2d at 980-981; *Labov v City of New York*, 154 AD2d 348, 348-349; *see also Laylon v Shaver*, 187 AD2d 983, 984-985). In this appeal, as in each of the above-cited cases, the jury essentially made a substantive error with respect to its calculation of a gross award of damages. Inasmuch as the error in this case was identified through examination of the jury's thought process, I conclude that it was not ministerial in nature.

Plaintiffs address the ministerial exception by relying on, inter alia, *Rose v Thau* (45 AD2d 182) and *Smith v Field* (302 AD2d 585), two cases on which the majority also relies.  In *Rose*, the Third Department affirmed the trial court's correction of a verdict erroneously reported by the jury inasmuch as the jury had inverted its apportionment of fault between two defendants.  Specifically, the jury members had apportioned 90% of the fault to the decedent, Richard J. Thau, and 10% of the fault to defendant Winifred D. Lucy, but subsequently signed affidavits agreeing that they had erred in reporting the verdict, averring that they intended to apportion 90% of the fault to Lucy, and 10% of the fault to the decedent (*id.* at 183-184).  In my view, the error in *Rose* was obviously clerical in nature and distinguishable from the facts of this case.  In any event, were the facts in *Rose* analogous to the facts here, I would nevertheless question the continuing precedential value of *Rose*'s holding given that the Third Department arguably resolved subsequent similar cases, i.e., *Lustyik* (246 AD2d 887) and *Grant* (167 AD2d 807), to the contrary.

The facts in *Smith v Field* (302 AD2d 585), the other case on which plaintiffs and the majority rely, are more analogous to those in this case.  In *Smith*, the Second Department concluded that the jury erred "in reporting and recording the actual verdict" and affirmed the trial court's correction of the record of the proceedings to reflect the actual verdict (*id.* at 587).  There, similar to this case, "[t]he verdict sheet regarding damages for future pain and suffering asked for the 'total amount of damages, if any' and 'the period of years for such award.'  The jury stated that the amount awarded was $5,000 for a period of 20 years" (*id.* at 585-586).  Before the jury left the courtroom, the plaintiffs' attorney sought to clarify whether the jury intended to award a total of $5,000 to be paid over a 20-year period, or a total of $5,000 each year for a 20-year period (*see id.* at 586).  The trial court denied the plaintiffs' application for clarification, and the plaintiffs subsequently moved "to correct the verdict based upon the unanimous statement in writing of all six jurors, made immediately after the jurors were discharged, that they 'intended to award plaintiff $5,000 per year for 20 years for a total of $100,000 for future pain and suffering' " (*id.*).  The trial court granted plaintiffs' motion and resettled the judgment and, on appeal, the Second Department affirmed the resettled judgment.

In my view, the *Smith* case is factually distinguishable from this case.  In *Smith* (302 AD2d at 586), the jury members clarified, in a unanimous writing, the part of the verdict at issue "immediately" after they were discharged, i.e., ostensibly within minutes.  In this case, however, the jury members did not make their written averments concerning their award of damages until several weeks after they rendered their verdict.

Even more important, however, is the fact that the *Smith* case appears to be an outlier in the jurisprudence of jury verdict impeachment.  Notably, it has never been cited for its holding, except in *DeCrescenzo v Gonzalez* (46 AD3d 607, 609), which cited it as contrasting authority.  Moreover, approximately seven years after

*Smith* was decided, the First Department considered a similar issue in *Breen-Burns v Scarsdale Woods Homeowners' Assn. Inc.* (73 AD3d 661, *lv dismissed* 15 NY3d 837, *lv denied* 16 NY3d 704). There, the Court addressed an alleged clerical error of the jury in reporting awards of future damages, noting that "juror affidavits alleged that the jury intended its future damages awards to be paid 'per year,' notwithstanding that the verdict sheet's special interrogatories had not provided for such interpretation or award basis" (*id.* at 662). The Court reversed an order granting the plaintiff's motion to set aside the verdict on grounds including the alleged clerical error by the jury in reporting its verdict, holding that, because "the alleged error in reporting the future damages awards involved an examination into how the jury determined [those] awards, . . . the alleged error was not ministerial in nature" (*id.*). Given the anomalous holding of *Smith* in comparison with the body of law surveyed above, I conclude that we should apply the logic of *Breen-Burns* to the facts herein and hold that the jury's error in reporting and recording its verdict was not ministerial in nature.

I further conclude, however, that the second *Moisakis* exception applies to the facts of the instant case. Under that exception, a new trial may be granted upon a finding by the trial court of "inherent defects, confusion or ambiguity in the verdict" (*Moisakis*, 265 AD2d at 458 [internal quotation marks omitted]). Typically, "[t]he confusion must be apparent from the *trial* record" (*id.* [emphasis added]; *cf. Porter*, 26 AD3d at 425). Although this Court's review is constrained by the limited parts of the trial record before us, I conclude that this case is obviously one in which the jury was confused, at least in part, with respect to the manner in which to record and report its verdict. Thus, I agree with Crouse that a new trial is warranted on the ground of juror confusion, but only with respect to damages for plaintiff's future pain and suffering. Like the majority, I therefore would modify the order by denying those parts of the posttrial motions to set aside the verdict with respect to Dr. Caputo, but I would further grant Crouse's "supplemental motion" to the extent that it seeks a new trial on the issue of damages for plaintiff's future pain and suffering.

Entered:  July 19, 2013                          Frances E. Cafarell
                                                 Clerk of the Court